ORDERED.

**Dated:  June 08, 2016**

Caryl E. Delano
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

In re:

HWA PROPERTIES, INC.,                    Case No. 9:14-bk-11774-FMD
                                          Chapter 11

                    Debtor.
_____/

**ORDER APPROVING DISCLOSURE STATEMENT AND CONFIRMING
BCB TARPON, LLC'S PLAN OF LIQUIDATION OF HWA PROPERTIES, INC.**
**(Doc. Nos. 379, 380, and 391)**

---

**Post-Confirmation Status Conference**

The initial post-confirmation status conference shall be held on **July 7, 2016, at 10:30 a.m.**  The deadline for BCB or the Reorganized Debtor to object to disputed claims is 120 days from the Effective Date (unless such period is extended by the Court upon motion of BCB or the Reorganized Debtor).

**Deadline for Filing Final Fee Applications**

The deadline for the Trustee's Professionals to file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred after the filing of the Professionals' respective interim fee applications through the Effective Date is the date that is **seven (7) days** after the occurrence of the Effective Date.  Any final applications by the Trustee's Professionals shall contain a seven (7) day negative notice provision.  If no written objections are timely filed, the Court will proceed to consider any final application without notice or hearing and may approve the requested compensation for services rendered and reimbursement of expenses.

---

        THIS CHAPTER 11 CASE came before the Court for hearing on May 25, 2016, at 11:00

a.m. (the "**Confirmation Hearing**"), to consider (i) final approval of the *Disclosure Statement in*

Connection with *BCB Tarpon, LLC's Plan of Liquidation of HWA Properties, Inc.* (Doc. No. 380) (the "**Disclosure Statement**"), filed by BCB Tarpon, LLC ("**BCB**" or the "**Proponent**"), (ii) confirmation of *BCB Tarpon, LLC's Plan of Liquidation of HWA Properties, Inc.* (Doc. No. 379) (the "**Plan**")[1] filed by BCB,[2] (iii) the *United States Trustee's Objection to Confirmation* (Doc. No. 396) (the "**UST Objection**") filed by the United States Trustee, (iv) the *Limited Objection to Confirmation of the BCB Tarpon LLC Plan of Liquidation by Suzann F. Albright, Individually and the Suzann F. Albright Revocable Trust* (Doc. No. 398) (the "**Albright Objection**" and together with the UST Objection, the "**Confirmation Objections**") filed by Suzann F. Albright, individually and the Suzann F. Albright Revocable Trust, (v) *BCB Tarpon, LLC's Motion for Cramdown* (Doc. No. 401) (the "**Cramdown Motion**") filed by BCB, and (vi) *BCB Tarpon, LLC's Motion to Allow Late Filed Ballot of Fifth Third Mortgage Company* (Doc. No. 404) (the "**Late Filed Ballot Motion**") filed by BCB. Appearances were made as reflected on the record.

At the Confirmation Hearing, counsel for BCB announced in open court additional modifications to the Plan to address portions of the Albright Objection, in addition to other modifications, which are set forth in paragraphs 2 and 3 below (the "**Plan Modifications**"). The Court considered (i) the Disclosure Statement, (ii) the Plan, (iii) the *Declaration of Timothy Scott Weidle in Support of Confirmation of BCB Tarpon's Plan of Liquidation for HWA Properties, Inc.* (Doc. No. 400) (the "**Declaration**"), (iv) the ballot tabulation (Doc. No. 399) and the updated ballot tabulation (Doc. No. 403) (collectively, the "**Ballot Tabulation**"), (v) Late Filed Ballot Motion, (vi) the Confirmation Objections, (vii) the Plan Modifications, (viii) the

---

[1] All capitalized terms not specifically defined herein shall have the meaning ascribed to them in the Plan.

[2] All references to the Plan and Disclosure Statement in this Confirmation Order shall be with respect to the Plan and Disclosure Statement attached to the *Notice of Filing Corrective Pages to BCB Tarpon, LLC's Plan of Liquidation of HWA Properties, Inc.* (Doc. No. 391) which contain the corrective pages and were served in the solicitation package.

Cramdown Motion, and (ix) the entire record in this chapter 11 case, along with the arguments and proffers of counsel at the Confirmation Hearing.  The Court, for the reasons stated orally and recorded in open court that shall constitute the Court's ruling, concludes that (i) the Plan has been proposed in good faith and meets all of the requirements of Sections 1126 and 1129 of the Bankruptcy Code, (ii) the Plan is fair and equitable and does not discriminate unfairly with respect to each class of claims or interests that is impaired under and has not accepted the Plan, and (iii) the Plan should be confirmed, and all Confirmation Objections not withdrawn at the Confirmation Hearing should be overruled.  The Court specifically finds and concludes as follows:[3]

A.     The Court has jurisdiction over this chapter 11 case under 28 U.S.C. §§ 157 and 1334.  This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

B.     Copies of a solicitation package containing the Disclosure Statement, the Plan, the *Order Conditionally Approving Disclosure Statement, Fixing Time to File Objections to the Disclosure Statement, Fixing Time to File Applications for Administrative Expenses, Setting Hearing on Confirmation of the Plan, and Setting Deadlines with Respect to Confirmation Hearing* (Doc. No. 381) (the "**Disclosure Statement Order**"), and a ballot were served on all creditors and parties-in-interest.  The Court finds that (i) timely and proper notice of the Confirmation Hearing, the time fixed for filing objections to confirmation, and the time for submitting ballots on the Plan were provided to all creditors and all parties in interest, (ii) such notice was adequate and sufficient to notify all creditors and all parties in interest of the

---

[3] Findings of fact set forth in this Confirmation Order are deemed to be conclusions of law, and such findings of fact are confirmed as conclusions of law.  All oral findings of fact and conclusions of law reached by the Court at the Confirmation Hearing are incorporated by reference and are made a part of this Confirmation Order in accordance with Bankruptcy Rule 7052(a).

Confirmation Hearing and the objection and voting deadlines as to the Plan, (iii) such notice complied in all respects with the procedural orders of this Court, the Bankruptcy Code, the Bankruptcy Rules and otherwise satisfied the requirements of due process, and (iv) the modifications in the Plan do not require additional disclosure under Section 1125 of the Bankruptcy Code, nor re-solicitation of votes under Section 1126 of the Bankruptcy Code.

C.     The Proponent and its attorneys have solicited votes to accept the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Disclosure Statement Order and are, therefore, entitled to the protections afforded by Section 1125(e) of the Bankruptcy Code.

D.     The Ballot Tabulation reflects the acceptance in both number and dollar amount of votes with respect to each Impaired Class that voted on the Plan.

E.     The Plan satisfies all of the requirements of Section 1129 of the Bankruptcy Code. Without limiting the generality of the foregoing, the Court specifically finds that (a) the Plan was proposed in good faith as referenced under Section 1129(a)(3); (b) the Proponent has complied with the applicable provisions of the Bankruptcy Code; (c) the Plan is in the best interest of creditors as referenced under Section 1129(a)(7) of the Bankruptcy Code; and (d) the Plan is feasible as referenced under Section 1129(a)(11) of the Bankruptcy Code.

F.     The principal purpose of the Plan is not for the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, and there has been no objection filed by any governmental unit asserting such avoidance.   Accordingly, the Plan complies with Section 1129(d) of the Bankruptcy Code.

G.     Appropriate circumstances exist to issue a release of claims in favor of BCB in light of the terms of the Global Settlement Agreement.   BCB has contributed substantial assets

towards the implementation of the Plan, and the release is necessary to the reorganization. As set forth below, all Impaired Classes voted to accept the Plan or are deemed to have voted to accept the Plan. The majority of the Impaired Classes are receiving property or other benefits under the terms of the Global Settlement Agreement to address such Claims. The issuance of the release contemplated in Section 11.3 of the Plan is fair and necessary under the unusual factual circumstances of this chapter 11 case.

Accordingly, it is

**ORDERED**:

1. **Final Approval of Disclosure Statement**. On May 5, 2016, the Court entered the Disclosure Statement Order, which among other things, (i) conditionally approved the Disclosure Statement as containing adequate information within the meaning of Section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, (ii) set the deadline for submission of Ballots to accept or reject the Plan, and (iii) established the deadline for filing objections to confirmation of the Plan and final approval of the Disclosure Statement. No objections to the final approval of the Disclosure Statement were filed. For the reasons stated orally and recorded in open court that shall constitute the Court's decision, any objections, if any, to the adequacy of the Disclosure Statement are **OVERRULED**. The Disclosure Statement complies with Section 1125 of the Bankruptcy Code and is hereby finally **APPROVED** as containing adequate information within the meaning of Section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017.

2. **Modification to the Plan.** The Plan Modifications announced on the record at the Confirmation Hearing and the other modifications to the Plan set forth in this Confirmation Order constitute technical changes and/or changes with respect to particular Claims by

agreement with or that improve the treatment of the Holders of such Claims, and do not affect a

material adverse change in the treatment of any other Claims or Interests.

3.     **Confirmation of Plan**.  The Plan is hereby **CONFIRMED** pursuant to Section

1129(a) and (b) of the Bankruptcy Code, with the following modifications, which shall become

part of the Plan and this Confirmation Order.

a.    The Global Settlement Agreement, including all of its exhibits, are attached to this Confirmation Order as **Exhibit "A."**  The Global Settlement Agreement, including all of its exhibits, shall be incorporated by reference into the Plan and the Confirmation Order as if fully set forth herein.[4]  As required under Section 3(f) of the Global Settlement Agreement, BCB and/or the Trustee shall be required to execute and deliver to Suzann F. Albright and her husband, Harry W. Albright, the IRS forms attached as Exhibit "B" to the Global Settlement Agreement.  In the event that BCB does not elect to have stock in the Reorganized Debtor issued pursuant to Section 5.12.1 of the Plan, the Albrights shall be responsible for filing the final tax return for the Debtor and shall have the Debtor's tax attributes through the Effective Date.  In the event that BCB elects to have stock in the Reorganized Debtor issued pursuant to Section 5.12.1 of the Plan, the Albrights shall be responsible for the cost of the accounting incurred in preparing the Debtor's draft K-1s and accounting for that period of time through the Effective Date and shall have the Debtor's tax attributes through the Effective Date. The Albrights shall furnish copies of those draft K-1s and accounting through the Effective Date to the Reorganized Debtor upon their completion. The Reorganized Debtor shall be responsible for the cost of the accounting incurred in preparing the Reorganized Debtor's tax return for the year ended December 31, 2016. The Reorganized Debtor shall supply the Albrights with accurate form K-1s for the year ended December 31, 2016 no later than March 15, 2017.

b.    The phrase "Subject to the release of claims and causes of action against the Settling Parties provided in the Global Settlement Agreement," shall be inserted at the beginning of the first sentence of Section 8.9.1 of the Plan.

c.    As provided in Section 5 of the Global Settlement Agreement, for tax purposes of HWA only, the following values shall be attributed to the following assets:

Tarpon Lots 1, 24, 25, 27, 37: $2,018,697.28
Tarpon Lots 31 and 32: $1,400,000.00
Tarpon Lot 29: $572,000.00
Romence Property: $75,659.00

---

[4] When serving copies of this Confirmation Order, BCB may omit Exhibit "A" from the service copies in its entirety and instead substitute a page indicating that Exhibit "A" has been omitted, but that full copies of the Global Settlement Agreement, including its exhibits, are available on the Court's docket at Doc. No. 364.

Tarpon Lot 42: $130,000.00
Tarpon Lots 23, 33, 35, 36: $1,940,000.00

d. Section 3.1.4 of the Plan is modified to add the following after the first sentence of the section: The Trustee shall also assign to BCB or its designee all of the Estate's right, title, and interest in the sale contract with Staci Neely that was previously approved by the Bankruptcy Court, including but not limited to the right to enforce the contract, and the Estate's right, title, and interest in any proceeds arising from such sale contract.

e. The words "at least $51,000" are hereby deleted and stricken from the first sentence of Section 8.2.1 of the Plan.

f. The second and third sentence of Section 8.10 of the Plan shall be deleted and superseded by the following: Upon the discharge of the Trustee pursuant to Section 11.4 of the Plan, BCB or its designee shall have the status of estate representative under Section 1123 of the Bankruptcy Code to, among other things, empower BCB or its designee to execute all deeds, instruments of conveyance, and other documents necessary to effectuate the transfers of Property contemplated by the Plan or the Global Settlement Agreement. Upon the discharge of the Trustee, the Bankruptcy Court, through the Confirmation Order and pursuant to Section 1142(b) of the Bankruptcy Code, shall authorize BCB or its designee to execute all documents for and on behalf of the Trustee to effectuate and further evidence the terms and conditions of the Plan or the Global Settlement Agreement or to otherwise comply with applicable law.

g. The phrase "Upon Confirmation of the Plan" shall be deleted from Section 11.4 and superseded with "Upon the occurrence of the Effective Date."

h. The phrase "provided that BCB or its designee elects to have stock in the Reorganized Debtor issued pursuant to Section 5.12.1 of the Plan" shall be inserted at the end of Section 2.2.92, so that the definition of "Reorganized Debtor" means the Debtor on and after the Effective Date as reorganized pursuant to the Plan, including any successor thereto by merger, consolidation or otherwise, provided that BCB or its designee elects to have stock in the Reorganized Debtor issued pursuant to Section 5.12.1 of the Plan.

i. All references to Fifth Third shall be to Fifth Third Mortgage Company, rather than Fifth Third Bank, N.A.

j. Section 5.12.1 shall be deleted in its entirety and superseded by the following: On the Effective Date all of the Class 12 Equity Interests as existed prior to the Petition Date shall be cancelled. At the sole election of BCB made on or before the Effective Date, equity interests in the Reorganized Debtor may be issued to BCB or its designee. In the event that BCB does not elect to issue equity interests in the Reorganized Debtor on or before the Effective Date, there will be no Reorganized Debtor, and the Plan

and entry of this Confirmation Order shall be deemed to be a plan for dissolution of the Debtor for the purposes of 26 U.S.C. § 6043 adopted by HWA as of the Effective Date.

k. The following shall be added to the end of Section 8.3: To the extent that no equity interests in the Reorganized Debtor are issued under Section 5.12.1, then BCB or its designee shall be vested with any of the Assets and Property of the Debtor and the Estate not otherwise conveyed on the Effective Date through an Effective Date Conveyance, free and clear of all Claims, Liens, encumbrances, charges, and/or other interests of Holders of Claims or Equity Interests, except as expressly provided in the Plan. Upon the occurrence of the Effective Date, if BCB does not elect to issue equity interests in the Reorganized Debtor, BCB shall have the status of estate representative under Section 1123(b)(3) of the Bankruptcy Code for the sole purpose of the enforcement, prosecution, settlement, or adjustment of any claim or interest belonging to the Debtor or the Estate.

l. The following phrase shall be inserted at the beginning of Sections 8.4, 8.5, 8.6.1, and 8.6.2: To the extent that BCB elects to issue equity interests in the Reorganized Debtor and equity interests in the Reorganized Debtor are issued in accordance with Section 5.12.1 of the Plan,

m. The second sentence of Section 8.4 of the Plan shall be stricken and deleted.

n. The phrase "or BCB or its designee, as the case may be" shall be inserted following first, second, and fourth reference to "Reorganized Debtor" in Section 8.9.2.

o. The following sentence shall be inserted at the end of Section 10.3: The notice of occurrence of the Effective Date shall indicate whether the Plan is a liquidating plan or whether the Plan is a plan of reorganization because BCB elected to issue stock in the Reorganized Debtor. If the Plan is a liquidating plan, then the Plan shall also be deemed to be a plan for the dissolution of HWA adopted as of the Effective Date for purposes of 26 U.S.C. § 6043(a) and, the Debtor shall not receive a discharge.

p. The following sentence shall be inserted at the beginning of Section 11.1: The Discharge Injunction provided by this section shall only apply if BCB elects to issue equity interests in the Reorganized Debtor and otherwise complies with the requirements of Section 1141(d) of the Bankruptcy Code.

4. **Confirmation Objections**. To the extent that (i) BCB does not elect to issue equity interests in the Reorganized Debtor and otherwise comply with the requirements of Section 1141(d) of the Bankruptcy Code and (ii) the notice of occurrence of Effective Date provides that the Plan is a plan of liquidation, the UST Objection is **SUSTAINED** in part, and

pursuant to Section 1141(d)(3)(A) of the Bankruptcy Code, the Debtor shall not be entitled to a discharge. The balance of the UST Objection and the Albright Objection are hereby **OVERRULED** to the extent not withdrawn. For the reasons stated orally and recorded in open court that shall constitute the Court's decision, any other objections, if any, to the confirmation of the Plan are **OVERRULED**.

5. **Plan Terms**. All terms of the Plan, and all relevant and necessary documents, shall be effective and binding upon the entry of the Confirmation Order and the Effective Date. The failure to reference or discuss any particular provision of the Plan in this Confirmation Order shall have no effect on this Court's approval and authorization of, or the validity, binding effect and enforceability of such provision and each provision is authorized and approved and shall have the same validity, binding effect, and enforceability as every other provision of the Plan, whether or not mentioned in this Confirmation Order.

6. **Cramdown Motion and Late Filed Ballot Motion**. The Cramdown Motion is **DENIED** as moot. The Late Filed Ballot Motion, which sought to allow the late filed ballot of Fifth Third accepting the Plan on account of Fifth Third's Class 7 Claim, is **GRANTED**.

7. **Ballot Report**. BCB filed the Ballot Tabulation, which reflected the acceptances and rejections of each Class that voted to accept or reject the Plan as of the commencement of the Confirmation Hearing.

8. **Jurisdiction and Venue**. This Court has jurisdiction over the Debtor; the Debtor's chapter 11 case; all of the Debtor's property, contracts, and assets, wherever located; all claims against and equity interests in the Debtor; and all holders of claims against and equity interests in the Debtor pursuant to 28 U.S.C. § 1334. Confirmation of the Plan and approval of the Disclosure Statement is a "core proceeding" pursuant to, without limitation, 28 U.S.C. §

157(b)(2)(A), (L), and (O), and this Court has jurisdiction to enter a final order with respect to confirmation. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

9. **Judicial Notice**. In connection with the Confirmation Hearing, the Court takes judicial notice of the record of this chapter 11 case, including, without limitation, all papers, pleadings, and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at, the hearings held before the Court during the pendency of this chapter 11 case.

10. **Oral Findings of Fact Incorporated**. All oral findings of fact and conclusions of law entered by the Court at the Confirmation Hearing are incorporated herein by this reference and are made a part hereof, in accordance with Bankruptcy Rule 7052(a). All findings of fact shall be construed as conclusions of law and conclusions of law construed as findings of fact when appropriate.

11. **Transmittal and Mailing of Materials; Notice**. In accordance with Bankruptcy Rule 2002, the Court finds and concludes that adequate and sufficient notice of the time for filing objections to the Plan was provided to the holders of claims and interests. The Disclosure Statement, Plan, Ballots, and the Disclosure Statement Order were transmitted and served in substantial compliance with the Disclosure Statement Order and the Bankruptcy Rules, and such transmittal and service were adequate and sufficient. Adequate and sufficient notice of the Confirmation Hearing and other deadlines, was given in compliance with the Disclosure Statement Order and the Bankruptcy Rules.

12. **Solicitation**. In accordance with Section 1126(b) of the Bankruptcy Code, the Court finds and concludes that: (a) the solicitation of votes to accept or reject the Plan and the Plan complied with all applicable non-bankruptcy law, rules and regulations governing the

adequacy of disclosure in connection with the solicitation; and (b) the solicitation was conducted after disclosure of adequate information, as defined in Section 1125(a) of the Bankruptcy Code.

13. **Burden of Proof**. BCB has met its burden of proving all of the elements of Section 1129(a) of the Bankruptcy Code.

14. **The Plan's Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))**. The Plan complies with all applicable provisions of the Bankruptcy Code, thereby satisfying Section 1129(a)(1) of the Bankruptcy Code.

15. **BCB's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))**. BCB has complied with the applicable provisions of the Bankruptcy Code, thereby satisfying Section 1129(a)(2) of the Bankruptcy Code. Specifically, BCB is a proper proponent of the Plan under Section 1121(a) of the Bankruptcy Code. BCB has complied with the applicable provisions of the Bankruptcy Code, including as provided or permitted by orders of this Court. BCB has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order in transmitting the Plan, the Disclosure Statement, the Ballots, and related documents and notices, and in soliciting and tabulating votes on the Plan. The corporate governance documents for the Debtor and any Reorganized Debtor, as the case may be, are hereby amended as necessary to include a provision prohibiting the issuance of non-voting equity securities to the extent required by Section 1123(a)(6) of the Bankruptcy Code.

16. **Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))**. BCB has proposed the Plan in good faith and is not by any means forbidden by law, thereby satisfying Section 1129(a)(3) of the Bankruptcy Code. In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the chapter 11 case and the formulation of the Plan. The chapter 11 case was filed, and the Plan was

proposed, with the legitimate and honest purpose of maximizing the value of the Debtor's assets and the recovery to creditors under the circumstances of this chapter 11 case.

17.     **Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))**.  All payments paid, or to be paid to Professionals, with funds of the Estate or by BCB in connection with this case or in connection with the Plan have been approved by or are subject to the approval of the Court as reasonable, thereby satisfying Section 1129(a)(4) of the Bankruptcy Code.

18.     **Directors and Officers (11 U.S.C. § 1129(a)(5))**.  Section 1129(a)(5) requires the disclosure of the identity and affiliations of any individual proposed to serve after confirmation of the Plan as a director, officer, or voting trustee of the Debtor, or a successor to the Debtor under the Plan.  After confirmation of the Plan, if BCB elects to issue equity interests in the Reorganized Debtor, the business and affairs of the Reorganized Debtor shall be managed by Scott Weidle, president of BCB.  If there is no Reorganized Debtor, BCB will also continued to be managed by Scott Weidle.

19.     **No Government Regulation of Rates (11 U.S.C. § 1129(a)(6))**.  Section 1129(a)(6) of the Bankruptcy Code is satisfied because the business of the Debtor is not subject to governmental regulation of rates.

20.     **Best Interests Test (11 U.S.C. § 1129(a)(7))**.  The Plan satisfies Section 1129(a)(7) of the Bankruptcy Code.  The Global Settlement Agreement provides for the consensual resolution of all or virtually all of the Claims Impaired under the various treatments provided in the Plan, and all of the Impaired Classes voted to accept the Plan or were deemed to vote to accept the Plan under the Global Settlement Agreement or other settlement agreements approved by the Court.  The information provided in the Disclosure Statement, the prior

liquidation analyses filed in connection with this chapter 11 case, and evidence proffered at the Confirmation Hearing: (a) are persuasive, credible and accurate as of the dates such evidence was prepared, presented, or proffered; (b) either have not been controverted by other persuasive evidence or have not been challenged; (c) are based upon reasonable and sound assumptions; (d) provide a reasonable estimate of the liquidation values of the Debtor upon a hypothetical conversion to a case under chapter 7 of the Bankruptcy Code; and (e) establish that each holder of a Claim in an Impaired Class that has not accepted the Plan will receive or retain under the Plan, on account of such Claim, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date.

21. **Acceptance or Rejection of Plan (11 U.S.C. § 1129(a)(8))**. Classes 3, 4, 6, 7, 8, 9, 11, and 12 (collectively, the "**Impaired Classes**") are impaired under the Plan as that term is defined in Section 1124 of the Bankruptcy Code. Accordingly, with the exception of Class 12, the Impaired Classes are entitled to submit votes to accept or reject the Plan. All Impaired Classes, with the exception of Class 12, voted to accept the Plan or are deemed to have accepted the Plan.

22. **Treatment of Administrative and Priority Tax Claims and Other Priority Claims (11 U.S.C. § 1129(a)(9))**. The treatment of Administrative Expense Claims and other Priority Claims under the Plan satisfies the requirements of Sections 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax Claims under the Plan satisfies Section 1129(a)(9)(C) of the Bankruptcy Code.

23. **Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10))**. All Classes entitled to vote on the Plan have voted to accept the Plan by filing a ballot or have been deemed

to accept the Plan pursuant to a settlement approved by the Court. As a result, at least one Impaired Class has voted to accept the Plan, which was determined without including any acceptance of the Plan by any insider, satisfying the requirement of Section 1129(a)(10) of the Bankruptcy Code.

24. **Feasibility (11 U.S.C. § 1129(a)(11))**. The Plan satisfies Section 1129(a)(11) of the Bankruptcy Code. The Confirmation Declaration and other evidence proffered at the Confirmation Hearing: (a) are persuasive, credible and accurate as of the dates such evidence was prepared, presented, or proffered; (b) either have not been controverted by other persuasive evidence or have not been challenged; (c) are based upon reasonable and sound assumptions; and (d) except as such liquidation is proposed by the Plan, establish that the Plan is feasible and that confirmation of the Plan is not likely to be followed by further financial reorganization of the Debtor.

25. **Payment of Fees (11 U.S.C. § 1129(a)(12))**. The Plan provides that all fees properly assessed and payable under 28 U.S.C. § 1930, as determined by the Court, have been paid or will be paid on the Effective Date of the Plan. All U.S. Trustee Fees assessed in this chapter 11 case for any period prior to the second quarter of 2016 have been paid, with the exception of a balance of $11.20 that is owed for U.S. Trustee Fees for the first quarter of 2016. BCB and the U.S. Trustee have agreed that quarterly fees in the amount of $4,875 shall be payable for the second quarter of 2016. This order is without any prejudice to positions that the U.S. Trustee or any other party or their respective counsel may take with respect to the assessment of fees under 28 U.S.C. § 1930 in any other bankruptcy case.

26.     **Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))**.  No retiree benefits, as that term is defined in Section 1114 of the Bankruptcy Code, exist in the chapter 11 case, making Section 1129(a)(13) of the Bankruptcy Code inapplicable.

27.     **Inapplicable Provisions (11 U.S.C. §§ 1129(a)(14), (15), and (16))**.  Sections 1129(a)(14) and (15) do not apply because the Debtor is not obligated to pay any domestic support obligations and is not an individual.  Section 1129(a)(16) does not apply in this chapter 11 case because the Debtor is a moneyed business or commercial corporation.

28.     **Satisfaction of the Requirements with Respect to Impaired Rejecting Classes (11 U.S.C. § 1129(b))**.  With respect to Class 12, the Plan is fair and equitable because there are no holders of any interests junior to the interests of such class.  The Court finds that the requirements of Section 1129(b) of the Bankruptcy Code are hereby satisfied with respect to any rejecting class and any other class of claims or interests that is Impaired under the Plan and has not accepted the Plan, if any.

29.     **Principal Purpose of Plan (11 U.S.C. § 1129(d))**.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, and there has been no objection filed by any governmental unit asserting such avoidance.  Accordingly, the Plan complies with Section 1129(d) of the Bankruptcy Code.

30.     **Good Faith Solicitation (11 U.S.C. §1125(e))**.  BCB and its respective attorneys and advisers have solicited votes to accept or reject the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order, and are, therefore, entitled to the protections afforded by Section 1125(e) of the Bankruptcy Code to the fullest extent.

31. **Transfers by Debtor, Vesting of Assets**. Except as otherwise expressly provided in the Plan, without any further action, pursuant to Sections 1141(b) and (c) of the Bankruptcy Code, all property and assets of the Debtor shall be transferred to and shall vest in the Reorganized Debtor, or its successors or assigns, as the case may be, free and clear of all Liens, charges, Claims, writs of garnishment, encumbrances and other interests, except as expressly provided in the Plan or this Confirmation Order. If BCB does not elect to issue equity interests in the Reorganized Debtor, then all property and assets of the Debtor shall be transferred to and shall vest in BCB or its designee, as the case may be, free and clear of all Liens, charges, Claims, writs of garnishment, encumbrances and other interests, except as expressly provided in the Plan or this Confirmation Order. The Albrights shall have the use of the Debtor's tax attributes in order to fulfill their obligation to complete the Debtor's final tax return and to satisfy the Debtor's tax obligations through the Effective Date. Such vesting does not constitute a voidable transfer under the Bankruptcy Code or applicable non-bankruptcy law. Pursuant to this Confirmation Order or Section 1142(b) of the Bankruptcy Code, BCB or the Trustee shall be authorized to execute, deliver, and record such documents, instruments, deeds, bills of sale, or other documents necessary or appropriate to reflect the transfer or vesting of the Property of the Debtor or the Estate in and to Reorganized Debtor or BCB's designee as of the Effective Date.

32. **Retention of Jurisdiction**. The Court's retention of jurisdiction as set forth in Article 12 of the Plan comports with the parameters contained in 28 U.S.C. § 157 and is to be interpreted as broadly as possible. Without limiting the provisions of Article 12, the Court's retention of jurisdiction include jurisdiction over all matters and parties in connection with objections to claims and the pursuit, litigation, and recovery of avoidance actions, surcharge

claims, fraudulent transfers, and all other claims or causes of action available to the Debtor or its estate. The Court also reserves jurisdiction to further modify the Plan as necessary.

33. **Preservation of Causes of Action**. Except to the extent provided under the Plan, all causes of action and objections to claims of the Debtor or the estate not specifically resolved or released through separate order of this Court or under the Global Settlement Agreement (the "**Retained Claims**") are to be retained and preserved to the full extent provided under Section 7.5 of the Plan and shall be the property of (i) the Reorganized Debtor or (ii) BCB or its designee and available to (i) the Reorganized Debtor or (ii) BCB or its designee as representative of the estate appointed under Section 1123(b)(3) of the Bankruptcy Code to the fullest extent allowable under applicable law. Confirmation of the Plan and entry of this Confirmation Order shall not (i) constitute an adjudication of any Retained Claim of the Debtor, the Reorganized Debtor, or BCB or its designee may have against any parties, whether known or unknown, asserted or unasserted, contingent or unliquidated, and (ii) act as *res judicata*, collateral estoppel, or otherwise preclude the pursuit, litigation, prosecution, or settlement of any claim, defense, or objection of cause of action or Retained Claims available to the Debtor, its Estate, the Reorganized Debtor, or BCB or its designee.

34. **Exemption From Certain Transfer Taxes 11 U.S.C. §1146**. The transactions contemplated by the Plan, including but not limited to (i) the transfer or vesting of the Property of the Debtor or the Estate in and to Reorganized Debtor and/or BCB or its designee as of the Effective Date as provided by the Plan or the Confirmation Order, (ii) the transfer of Lot 29, the FMIRE Lots, FMIRE Lot 42, the BB&T Lots, and the Romence Property to BCB or its designee as of the Effective Date, and (iii) the transfer of the Fifth Third Lots, are in contemplation of, a necessary condition precedent and essential to, and necessary to consummate and implement the

confirmation of the Plan in this case, and accordingly, each constitutes a transfer to which Section 1146(a) of the Bankruptcy Code applies. The Debtor, the Reorganized Debtor, the Trustee, BCB, Fifth Third, and any other party receiving Property under the Plan shall be entitled to any and all rights and benefits that may be afforded to them by Section 1146(a) of the Bankruptcy Code. Pursuant to Section 1146(a) of the Bankruptcy Code, the sale or transfer of the Debtor's, the Estate's, or the Reorganized Debtor's property or the making, delivery, or recording of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, or the vesting, transfer, or sale of any real or personal property of, by, or in the Debtor, the Reorganized Debtor, or BCB or its designee pursuant to, in implementation of, or as contemplated by the Plan, or any transaction arising out of, contemplated by, or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and appropriate state or local governmental officials or agents shall be, and hereby are, directed to accept and abide by the terms of this Confirmation Order and to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Furthermore, the execution and delivery of the deeds or other documents evidencing the transfers shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment pursuant to Section 1146(a) of the Bankruptcy Code and § 12B-4.054(30) of the Florida Administrative Code.

35.    **Exemption from Securities Law**.  To the fullest extent permitted under Section 1145 of the Bankruptcy Code, any issuance or reissuance of new stock and any other securities pursuant to the Plan is exempt from Section 5 of the Securities Act of 1933 and any state or local law requiring registration for the offer or sale of the same, or the registration or licensing of an issuer of, underwriter of, broker, or dealer in such securities.

36.    **Discharge Injunction**.  **The Discharge Injunction shall only apply if BCB elects to issue equity interests in the Reorganized Debtor on or before the Effective Date and otherwise complies with the requirements of Section 1141(d) of the Bankruptcy Code.** Except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order shall operate as a discharge, pursuant to Section 1141(d) of the Bankruptcy Code, to the fullest extent permitted by applicable law, as of the Effective Date, of the Debtor and its Estate and the Reorganized Debtor from any and all Debts of and Claims of any nature whatsoever against the Debtor that arose at any time prior to the Effective Date, including any and all Claims for principal and interest, whether accrued before, on or after the Petition Date. Except as otherwise expressly provided in the Plan or in the Confirmation Order, but without limiting the generality of the foregoing, on the Effective Date, the Debtor and its Estate and the Reorganized Debtor, and their respective successors or assigns, shall be discharged, to the fullest extent permitted by applicable law, from any Claim or Debt that arose prior to the Effective Date and from any and all Debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based on such Debt was filed pursuant to Section 501 of the Bankruptcy Code, (b) a Claim based on such Debt is an Allowed Claim pursuant to Section 502 of the Bankruptcy Code, or (c) the Holder of a Claim based on such Debt has voted to accept the Plan. As of the Effective Date, except as otherwise expressly

provided in the Plan or in the Confirmation Order, all Persons and Entities, including all Holders of Claims or Equity Interests, shall be forever precluded and permanently enjoined to the fullest extent permitted by applicable law from asserting directly or indirectly against the Debtor or its Estate or the Reorganized Debtor, or any of their respective successors and assigns, or the assets or Properties of any of them, any other or further Claims, Debts, rights, causes of action, remedies, or Liabilities based upon any act, omission, document, instrument, transaction, event, or other activity of any kind or nature that occurred prior to the Effective Date or that occurs in connection with implementation of the Plan, and the Confirmation Order shall contain appropriate injunctive language to that effect. As of the Effective Date, Holders of Equity Interests shall have no rights arising from or relating to such Equity Interests, except as otherwise expressly provided in the Plan or this Confirmation Order. The Albrights shall retain the Debtor's tax attributes through the Effective Date in order to fulfill their obligation to complete the Debtor's final tax return and to satisfy the Debtor's tax obligations through the Effective Date. In accordance with the foregoing, except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order shall be a judicial determination of the discharge or termination of all such Claims and other Debts and Liabilities against the Debtor, pursuant to Sections 524 and 1141 of the Bankruptcy Code, to the fullest extent permitted by applicable law, and such discharge shall void any judgment obtained against the Debtor, at any time, to the extent that such judgment relates to a discharged or terminated Claim, Liability, or Debt. This discharge and injunction shall not include and does not affect the obligations under the Plan.

37. **Exculpation from Liability.** The Trustee, BCB, and the Professionals for the Trustee and BCB, (acting in such capacity), (collectively, the "**Exculpated Parties**") shall

neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, or confirmation of the Plan, the Disclosure Statement, the Global Settlement Agreement, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Bankruptcy Case, in each case for the period on and after the Petition Date and through the Effective Date; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party. With respect to Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Bankruptcy Case. Any such claims shall be governed by the standard of care otherwise applicable to the standard of negligence claims outside of bankruptcy. The rights granted under Article 11.2 of the Plan are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Exculpated Parties have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law. In furtherance of the foregoing, the Exculpated Parties shall have the fullest protection afforded under Section 1125(e) of the Bankruptcy Code and all applicable law from liability for violation of any applicable law, rule or regulation governing the solicitation of acceptance or rejection of a plan. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation.

38.     **Release of All Causes of Action Against BCB.**   On the Effective Date, the Reorganized Debtor and the Estate shall irrevocably, unconditionally, and fully release, acquit, and forever discharge BCB, and its respective successors, agents, servants, and representatives in

their roles as such from any and all actions, causes of action (whether common law, statutory, or other, and whether at law or in equity), rights, claims, obligations, contracts, liabilities, losses, lawsuits, controversies, contracts, accounts, debts, damages (including pecuniary, non-pecuniary, special, punitive, and compensatory damages), penalties, fines, demands, covenants, guarantees, promises, agreements (both express and implied), warranties (both express and implied), costs, interest, attorney's fees, injuries, controversies, and any other losses, damages, and expenses of any kind or nature whatsoever, whether known or unknown, accrued or unaccrued, discoverable or undiscoverable, based in whole or in part upon any act or omission, transaction, event or other occurrence taking place before the Effective Date, which are in any way relating to the Debtor, the Bankruptcy Case, any Property of the Debtor or the Estate, the business or operations of the Debtor, any Plan Documents, the Plan, or any of the transactions contemplated thereby. This release shall not include and does not affect the obligations under the Plan.

39.    **Releases Under Global Settlement Agreement.**  All releases given in the Global Settlement Agreement are approved and are deemed to have been given by the Settling Parties upon the entry of this Confirmation Order, subject to full performance of the terms of the Global Settlement Agreement.

40.    **Discharge of the Trustee and His Professionals.**  Upon the occurrence of the Effective Date, the Trustee and his Professionals shall be discharged from any further obligations in connection with the Bankruptcy Case and the employment of any Professionals retained by the Trustee shall be terminated.

41.    **Effectuating Documents**.  The Debtor, the Reorganized Debtor, BCB, and/or the Trustee, as appropriate, are authorized to execute, deliver, file or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be

necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan.  Upon the discharge of the Trustee pursuant to Section 11.4 of the Plan, BCB or its designee shall have the status of estate representative under Section 1123 of the Bankruptcy Code to, among other things, empower BCB or its designee to execute all deeds, instruments of conveyance, and other documents necessary to effectuate the transfers of Property contemplated by the Plan or the Global Settlement Agreement.  Upon the discharge of the Trustee, the BCB or its designee is authorized to execute all documents for and on behalf of the Trustee to effectuate and further evidence the terms and conditions of the Plan or the Global Settlement Agreement or to otherwise comply with applicable law.

42. **Effective Date**.  As conditions precedent to the Effective Date, (a) the Confirmation Order shall have been entered by the Court, duly entered on the docket for the Bankruptcy Case by the Clerk of the Court, and shall have become a Final Order, (b) BCB shall have acquired the Claims and/or Lien positions of the Davis Lenders and FineMark as provided in the Global Settlement Agreement and the Plan, and (c) the execution of any deeds or instruments of conveyance by the Trustee necessary to effectuate the Effective Date Conveyances or the transactions contemplated by the Global Settlement Agreement.  Upon the Effective Date, all of the provisions of this Plan shall be binding on the Debtor, the Estate, all Creditors, and all other entities who are affected (or whose interests are affected) in any manner by the Plan provided, however, if the Effective Date of the Plan does not occur and the Plan does not become effective, none of the Plan's terms, provisions, conclusions, or valuations shall be binding on any of the aforementioned parties.   Under no circumstances shall the Effective Date occur after June 29, 2016, absent the written approval of the Settlement Parties.

43. **Notice of Entry of Confirmation Order, Effective Date, and Further Notices**.

Counsel for BCB shall serve a copy of this Confirmation Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) on all creditors and parties in interest within three (3) business days of the entry of this Confirmation Order, and shall promptly file proof of service. All further notices to be served on creditors and parties in interest may be served only on the Local Rule 1007-2 list, unless more limited notice is ordered or permitted by separate order of the Court. Counsel for BCB shall also file a notice of the occurrence of the Effective Date, promptly after such date occurs, and serve such notice via CM/ECF and on the Local Rule 1007-2 list. The notice of occurrence of the Effective Date shall indicate whether the Plan is a liquidating plan or whether the Plan is a plan of reorganization because BCB elected to issue stock in the Reorganized Debtor.

44. **Waiver of Rule 3020(e)**. For the reasons stated on the record at the Confirmation Hearing, good cause exists for waiving and eliminating the stay of this order set forth in Bankruptcy Rule 3020(e) and this order is effective upon entry. The stay of this order set forth in Bankruptcy Rule 3020(e) is hereby waived.

*Attorney Eric D. Jacobs is directed to serve a copy of this order on all interested parties who are non-CM/ECF users and to file a proof of service within 3 days of entry of the order.*

# EXHIBIT "A"

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is made and entered into this 25th day of April 2016 ("Effective Date"), by and between (i) Philip von Kahle, Chapter 11 Trustee for the estate of HWA Properties, Inc., (the "Trustee"), (ii) FineMark National Bank and Trust ("FineMark"), (iii) Branch Banking & Trust Company ("BB&T"), (iv) Fifth Third Mortgage Company ("Fifth Third"), (v) Stichter, Riedel, Blain & Postler, P.A. ("SRBP"), (vi) FMIRE, Inc. ("FMIRE"), (vii) Tarphunt, LLC ("Tarphunt"), (viii) Least, LLC ("Least"), (ix) Suzann F. Albright ("Ms. Albright"), (x) Harry W. Albright, Jr. ("Mr. Albright"), (xi) Suzann F. Albright Revocable Trust Dated 12/21/2010 (the "Albright Trust"), (xii) BCB Tarpon LLC ("BCB"), and (xiii) David F. Davis and Henry R. Block, as Trustees (collectively, the "Davis Lenders"), (xiv) Allied Capital Corporation, (xv) RV Hunt, LLC (xvi) SALB, LLC (xvii) HAS Operating 2, LLC, (xviii) Patken Construction Management, Inc., and (xix) Westnedge Square, LLC (collectively the 19 parties are the "Settling Parties"). The Settling Parties hereby agree as follows:

## RECITALS

WHEREAS, HWA Properties, Inc. ("HWA" or "Debtor") filed a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code on October 6, 2014 (the "Petition Date"), Case No. 9:14-bk-11774-FMD ("HWA Bankruptcy Case").

WHEREAS, HWA owns Lots 1, 24, 25, 27, 29, 31, 32, and 37 in Tarpon Pointe Estates, Tarpon Estates Subdivision in Lee County, Florida (collectively "Tarpon Lots").

WHEREAS, Philip von Kahle ("Trustee") was appointed as Chapter 11 Trustee of the HWA Bankruptcy Case by Order of the Bankruptcy Court dated October 16, 2015 (Doc. No. 265) to administer the assets of the HWA estate (the "HWA Bankruptcy Estate"). The Trustee hired Trenam Law, Michael Moecker & Associates, Inc., and Moecker Realty, Inc. as his professionals for the HWA Bankruptcy Estate.

WHEREAS, HWA was the owner and holder of a Promissory Note to Southwest Florida Holding Co., Inc. ("Southwest") dated May 27, 2010 in the principal amount of $265,350.00 (the "Southwest Note"), which is secured by a Mortgage covering real property located in Hendry County, Florida and recorded on June 7, 2010, Instrument # 201026005357 in the Public Records of Hendry County, Florida ("Southwest Mortgage"). Collectively the Southwest Note and Southwest Mortgage are referred to herein as the "Assigned Southwest Note and Mortgage."

WHEREAS, FineMark is the holder of a Promissory Note to HWA originally dated July 10, 2009, in the original principal amount of $2,600,000.00, as amended, which Note is secured by, *inter alia*, a Mortgage originally dated July 10, 2009, covering Lots 29, 30, 33, and 35 of the Tarpon Lots, as amended (the "Mortgage") and a Mortgage Modification and Spreader Agreement originally dated July 10, 2013 (the "Spreader"). Additionally, FineMark assumed a loan in the amount of $2,080,000.00 from Optimum Bank. Both loans are secured also by a commercial pledge agreement on the trust account of the Albright Trust held at FineMark.

**WHEREAS,** FineMark is now holding in suspense $198,226.81, from the sale proceeds of the Assigned Southwest Note and Mortgage, resulting from actions taken in the Chapter 11 bankruptcy of Southwest filed on October 23, 2015, Case No. 9:15-bk-10713-FMD ("Suspense Account").

**WHEREAS,** BB&T has a secured claim in the amount of at least $2,138,308.67, secured by Tarpon Lots 1, 24, 25, 27, and 37 (the "BB&T Lots"), as reduced from its original claim by the Order Granting Trustee's Amended Motion to (A) Sell Real Property Free and Clear of Liens Pursuant to 11 U.S.C. § 363; as Supplemented, and (B) Approve Surcharge for Estate (Doc. No. 314).

**WHEREAS,** Fifth Third is the holder of 2 Promissory Notes and 2 separate Mortgages originally dated November 11, 2004, secured by Tarpon Lots Lots 31 and 32 ("Fifth Third Lots"), whereby Fifth Third has filed 2 separate secured claims # 18-1 in the approximate amount of $762,711.98 plus interest and claim # 17-1 in the amount of $757,410.01 plus interest for a combined total of $1,520,121.99 plus interest costs and attorney's fees if appropriate under section 506(b) of the Bankruptcy Code.

**WHEREAS,** Least asserts a lien of $1,133,931.74 against HWA's estate secured by real property located at 301 Romence Road, Portgage, Michigan (the "Romence Property").

**WHEREAS,** on December 1, 2009, BCB Tarpon, LLC ("BCB") filed an action in against HWA and Mr. Albright in the Circuit Court for the Twentieth Judicial Circuit in and for Lee County, Florida, as Case No. Case No. 09-CA-5375 (the "BCB Lawsuit"). As a result of the BCB Lawsuit, BCB was awarded a judgment against Mr. Albright in the amount $3,444,039.93 (the "Albright Judgment"). BCB filed proof of claim #11 against HWA in the amount of $3,636,330.16.

**WHEREAS,** SRBP filed a Second Application for Interim Compensation and a Final Application for Compensation [Dkt. No. 241, and 330] seeking total payment of $147,533.49 as an allowed administrative expense claim ("SRBP Applications"). BCB objected to the SRBP Applications.

**WHEREAS,** BCB filed a Motion for Substantial Contribution seeking $128,590.94 from the HWA Bankruptcy Estate [Dkt. No. 331]. BB&T and the Tax Collector for Lee County filed objections to the Motion for Substantial Contribution.

**WHEREAS,** on January 20, 2016, the Trustee filed a complaint against FMIRE, Tarphunt, Ms. Albright, Mr. Albright, Least, and the Albright Trust for the fraudulent transfer of properties or sale or financing of the properties, injunctive relief, alter ego liability, and breach of fiduciary duty (Doc. No. 1, as amended in Doc. No. 9 ("Amended Complaint") in Adversary Proceeding No. 9:16-ap-00041-FMD (the "Adversary Proceeding"). In the Adversary Complaint, the Trustee seeks avoidance of transfers of Tarpon Lots 23, 33, 35, 36, and 42. For purposes herein, the term Adversary Proceeding includes all claims by and through HWA that were or could have been raised in the Adversary Proceeding. The Trustee alleged in the

complaint filed in the Adversary Proceeding that the Debtor was insolvent at the time of the alleged fraudulent transfers or became insolvent as a result of the fraudulent transfers.

WHEREAS, David F. Davis, as Trustee, asserts an undivided 45.492140% security interest in Lots 23, 33, 35, and 36, and Henry R. Block, as Trustee, both of the Davis Lenders, asserts an undivided 54.507860% security interest in Tarpon Lots 23, 33, 35, and 36, pursuant to a Promissory Note, Mortgage Security Agreement, Assignment of Rents Containing a Future Advance Clause and Restricting Alienation, as modified, whereby the Davis Lenders assert a security interest of $1,750,000.00 resulting from $1,400,000.00 (Loan No. 1) and $350,000.00 (Loan No. 2) (collectively, the "Davis Loans"). The Davis Lenders sought stay relief in the HWA Bankruptcy Case regarding the same.

WHEREAS, in the Adversary Proceeding the Court imposed an injunction ("Injunction") against the Albright Trust prohibiting the transfer of funds without further Court authorization.

WHEREAS, for purposes of this Settlement Agreement the term "Loan Documents" shall mean and include any and all financing documents of any nature, including but not limited to promissory notes, mortgages, security agreements, guarantees, modifications, amendments or any similar instrument or document as appropriate in context.

WHEREAS, the Settling Parties recognize and agree that settlement of all issues addressed herein are in the best interests of the Settling Parties, and will result in a savings of attorneys' fees, costs, and time.

THEREFORE, it is hereby agreed as follows:

## SETTLEMENT TERMS

In consideration of the agreements, promises, and warranties set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Settling Parties agree as follows:

1.   **Recitals**.  The Settling Parties acknowledge and agree that the above recitals are true and correct and incorporated herein.

2.   **Conditions Precedent.**  The Settling Parties agree that the enforceability of this Settlement Agreement is subject only to the entry of a final and non-appealable order of this Bankruptcy Court approving an Emergency Motion to Compromise Controversy to be filed before April 26, 2016 in form and substance reasonably acceptable to the Settling Parties which order is no longer subject to appeal, reconsideration or other judicial review (the "Approval Order"); provided, however, that if no objections to the motion seeking entry of the Approval Order are filed or otherwise timely asserted, the Settlement Agreement shall be enforceable upon entry of the Approval Order.

3.  **Settlement.**  The Settling Parties agree to the following terms:

a.  Finemark:  In full and final satisfaction of FineMark's claims to all of HWA's Tarpon Lots and the Albright Trust, FineMark shall be paid to the following:  All proceeds currently held in the Suspense Account; and $578,129.89 (plus all accrued interest $90.17 per diem and legal fees incurred from the Effective Date until payment) from the Albright Trust.  The funds from the Albright Trust are being paid in satisfaction of the claims raised in the Adversary Proceeding, BCB Lawsuit, Albright Judgment, and FineMark's security interest in the Albright Trust account.  The funds from the Albright Trust will be paid to BCB; concurrently BCB will instruct that those funds from the Albright Trust be paid to FineMark so that the funds shall be transferred from the Albright Trust directly to FineMark in a simultaneous closing to occur within three business days after the entry of the Approval Order.  In exchange for the foregoing, FineMark shall transfer all liens and claims against the HWA Bankruptcy Estate and its assets, including any liens on Lot 29 in Tarpon Estates and all liens established or asserted under the Spreader Agreement to BCB; and release all liens and claims against Mr. and Ms. Albright, the Albright Trust, and any other collateral securing its claim. The HWA Bankruptcy Estate shall retain the Tarpon Lots free and clear of Finemark's claims, liens, and encumbrances, except as transferred to BCB. However, the Trustee shall have a superior lien on Lot 29 in an amount equal to his allowed administrative claim, including the fees of his professionals as stated in paragraph 3(j) below, which shall prime the lien being acquired by BCB. The Trustee shall release such lien, and deem the same paid in full, upon receipt of payment of all amounts due under paragraph 3(j), including the $20,000.00 discount being provided by Trenam Law.

b.  FMIRE:  FMIRE consents to the entry of a judgment in the Adversary Proceeding avoiding the transfers of Tarpon Lots 23, 33, 35, 36, and 42 immediately upon entry of the Approval Order.  The Injunction shall be released against the Albright Trust upon entry of the Approval Order.  All remaining funds in the Albright Trust, after payment of all of the amounts detailed in this Settlement Agreement, shall be released by the Trustee to the Albrights free and clear of all claims, liens and encumbrances by the HWA Bankruptcy Estate, BCB and Finemark.

c.  BCB:  In connection with an anticipated Chapter 11 Plan by BCB, BCB shall purchase the equity or assets of HWA in exchange for satisfaction of its claims in the HWA Bankruptcy Case, and a withdrawal of its Motion for Substantial Contribution, as well as the release provided for below.

BCB shall cease any and all collection efforts against Mr. and Ms. Albright, Albright Trust, FMIRE, Least, TarpHunt, Davis Lenders, the HWA Bankruptcy Estate, and dismiss the BCB Lawsuit, including the related interlocutory appeal, with prejudice.  BCB shall also file and record a Satisfaction of Judgment for the Stipulated Final Judgment in Favor of Plaintiff, BCB Tarpon, LLC recorded in the public records of Lee County, Florida, Instrument # 2014000207126 and re-

recorded in Instrument #2015000009678 in the public records of Lee County, Florida.

BCB shall file a Chapter 11 Plan incorporating the terms of this Settlement Agreement within three (3) days after the entry of the Approval Order. The contemplated effective date of such Chapter 11 Plan shall be no later than June 29, 2016.

d. <u>SRBP</u>: The Albrights will be solely liable and responsible for the payment and satisfaction of any administrative expense or other claim by SRBP, as agreed between SRBP and the Albrights. Such fees shall not be payable by the estate or the Debtor or as a condition of confirmation of any plan of reorganization in the Debtor's chapter 11 case notwithstanding the requirements of Section 1129(a)(9)(A) of the Bankruptcy Code, and shall not be an impediment to substantial consummation of the Plan nor entry of a final decree. Subject to the foregoing, BCB and the Chapter 11 Trustee will not object, and will withdraw with prejudice any filed objections, to the Debtor's attorney's fees.

e. <u>Romence Property</u>: Least shall waive its claim in the HWA Bankruptcy Case and waive its lien in the Romence Property, approximately $1,133,931.74. The Romence Property shall remain property of the HWA Bankruptcy Estate, free and clear of Least's lien.

f. <u>Albrights</u>: Mr. Albright and/or Ms. Albright shall at their sole discretion either (i) pay $50,000.00 to BCB within seven (7) days of entry of the Approval Order, or (ii) shall pay the greater of $15,000.00 or the appraised fair market value of the highlighted items on the inventory attached as *Exhibit A*, as established by an appraisal to be conducted by Read and Kelley Estate Services, LLC. The payment under subparagraph (ii) shall be made on the later of seven (7) days after the entry of the Approval Order or two business days after receipt of the appraisal report. Mr. and Mrs. Albright shall pay the cost of the appraisal. The un-highlighted items on *Exhibit A* shall be surrendered to BCB within seven (7) days of entry of the Approval Order. Within seven (7) days of BCB's receipt of payment under (ii), all of the highlighted items shall be returned to the Albrights by BCB. BCB shall authorize the return of the electronics presently in the custody of Ehounds upon execution of this Agreement so that they may be included in the appraisal.

Upon confirmation of the Chapter 11 Plan, Mr. and Mrs. Albright's stock/shares in HWA shall be cancelled. BCB or the Trustee shall execute and deliver to Mr. Albright or Ms. Albright any documents required to allow the Albrights to close out their ownership of the stocks/shares in HWA, including IRS forms to allow an interim close out of the books method as shown in the attached *Exhibit B*. Beyond the payments referenced in paragraphs 3(a), 3(d), and 3(f), Mr. and Mrs. Albright and their respective entities and trusts, shall have no further financial obligations owed to the Settling Parties.

g. <u>BB&T</u>: BCB agrees to pay and BB&T agrees to accept payment of $2,018,697.28 in full satisfaction of its secured claim on the BB&T Lots. Payment must be received on or before June 29, 2016, via wire transfer to BB&T's designated account. Immediately following receipt of payment, BB&T shall file satisfactions of mortgage for the BB&T Lots (Tarpon Lots 1, 24, 25, 27 and 37) in the public records of Lee County, Florida. BB&T shall also release the two (2) guarantors of the debt, Mr. Albright and the Harry W. Albright, Jr. Revocable Trust u/a/d February 22, 1989, as amended and restated in its entirety on February 11, 2000.

h. <u>Fifth Third</u>: Fifth Third agrees to accept either of the following two alternative treatments, to be determined in the discretion of BCB on or before 5:00pm EST on April 26, 2016: (i) payment of $1,400,000.00 in full satisfaction of its secured claims #17-1 and 18-1 in the HWA Bankruptcy Case on or before June 29, 2016; or (ii) surrender by the HWA Bankruptcy Estate of the Fifth Third Lots to Fifth Third, to be surrendered in connection with confirmation of the anticipated Chapter 11 plan. In the event BCB chooses option (ii), the Settling Parties consent to surrender of the Fifth Third Lots, and no Settling Party will impede Fifth Third's effort to take title to the Fifth Third Lots and Fifth Third shall retain its rights to seek deficiency in accordance with its state law remedies as to the Fifth Third Lots in its discretion.

i. <u>Davis Lenders</u>: BCB agrees to pay and the Davis Lenders agree to accept $1,940,000.000 to purchase the Davis Lenders' position in the Davis Loans, the closing of which shall occur on or before May 2, 2016 pursuant to the purchase and sale agreement attached as *Exhibit C*.

j. <u>Trustee and its Professionals</u>: The Trustee and his professionals are owed the following amounts as of the Effective Date:
    i. $157,118.43 Trenam Law
    ii. $53,250 Trustee's fee
    iii. $10,000 Moecker & Associates/Moecker Realty
    iv. $2,334.89 Liability Insurance Premium
    v. $4,553.63 in UST fees for Q4 2015 disbursements
    vi. $650.00 2 Q of UST fees for 2016

The HWA Bankruptcy Estate has or will shortly have $51,511.24 ($40,459.24 per March Monthly Operating Report, and $11,052.00 anticipated from Neely settlement). Trustee and professional fees continue to accrue. The Trustee and his professionals agree to discount the fees owed to Trenam Law by $20,000.00. BCB shall pay the remaining accrued Trustee and professional fees and expenses for the HWA Bankruptcy Estate after deduction of the amounts in the HWA

Bankruptcy Estate on the confirmation effective date and the $20,000.00 discount to Trenam Law's fees, estimated to be no less than $176,500.00. The Settling Parties agree to the allowance of these fees as allowed administrative expenses of the HWA Bankruptcy Estate.

The Trustee and his professionals shall cease marketing efforts on the Tarpon Lots on the Effective Date. Upon confirmation of the anticipated Chapter 11 Plan, the Trustee and his professionals shall be discharged from any further obligations in the HWA Bankruptcy Case.

4. **Support of a Chapter 11 Plan**. The Settling Parties agree to support and cast ballots voting in favor of a Chapter 11 Plan to be proposed by BCB which embodies the terms of this Settlement Agreement. The Settling Parties consent to the Bankruptcy Court's expedited consideration of the proposed Chapter 11 Plan and agree to reduce notice periods as required to comply with the terms of this Settlement Agreement.

5. **HWA Asset Values**. For tax purposes of HWA only, the following values shall be attributed to the following assets:

   a. Tarpon Lots 1, 24, 25, 27, 37: $2,018,697.28
   b. Tarpon Lots 31 and 32: $1,400,000.00
   c. Tarpon Lot 29: $572,000.00
   d. Romence Property: $75,659.00
   e. Tarpon Lot 42: $130,000.00
   f. Tarpon Lots 23, 33, 35, 36: $1,940,000.00

6. **Best Efforts**. The Settling Parties and their counsel shall use their best efforts to effectuate the settlement of the stated terms and conditions set forth herein, and obtain the Approval Order.

7. **Fees and Costs**. Unless otherwise specified herein, the Settling Parties agree to bear their own attorneys' fees and costs with respect to this Settlement Agreement.

8. **Release and Waiver of the Settling Parties**. EXCEPT AS TO FIFTH THIRD WHO RETAINS ITS RIGHTS PURSUANT TO PARAGRAPH 3(h)(ii) ONLY ABOVE, EFFECTIVE UPON THE ENTRY OF THE APPROVAL ORDER, THE ENTRY OF AN ORDER CONFIRMING A CHAPTER PLAN EMBODYING THE TERMS OF THIS AGREEMENT, AND FULL PERFORMANCE UNDER THE TERMS CONTAINED HEREIN, THE SETTLING PARTIES, THEIR PROFESSIONALS, OFFICERS, DIRECTORS, SUCCESSORS, PREDECESSORS, ASSIGNS, HEIRS, DEVISEES, EXECUTORS, ADMINISTRATORS, AFFILIATES, REPRESENTATIVES, ASSIGNS, TRUSTEES, EMPLOYEES, AND ALL OTHER AGENTS SHALL FOREVER RELEASE, DISCHARGE, AND WAIVE, AND SHALL BE DEEMED TO HAVE RELEASED, DISCHARGED, AND WAIVED, ANY AND ALL CLAIMS, LIABILITIES, COSTS (INCLUDING ATTORNEYS' FEES AND COSTS) AND CAUSES OF ACTION, THEY HAVE OR MAY HEREAFTER HAVE AGAINST THE EACH OTHER, THEIR PROFESSIONALS, OFFICERS,

DIRECTORS, SUCCESSORS, PREDECESSORS, ASSIGNS, HEIRS, DEVISEES, EXECUTORS, ADMINISTRATORS, AFFILIATES, REPRESENTATIVES, ASSIGNS, TRUSTEES, EMPLOYEES, AND ALL OTHER AGENTS, ARISING UNDER LOAN DOCUMENTS, AND SPECIFICALLY RELATED TO CLAIMS ASSERTED OR THAT COULD HAVE BEEN ASSERTED IN THE HWA BANKRUTPCY CASE, THE ADVERSARY PROCEDING, BCB LAWSUIT, ANY CONTESTED MATTER IN THE HWA BANRKUPTCY CASE OR ANY OTHER ACTION ARISING OUT OF THE HWA BANKRUTPCY CASE, OTHER THAN THE OBLIGATIONS ARISING UNDER THIS SETTLEMENT AGREEMENT. THE FOREGOING SHALL IN NO WAY PRECLUDE THE SETTLING PARTIES FROM EXERCISING THEIR RIGHTS AND INTERESTS UNDER ANY LOAN DOCUMENTS UNRELATED TO THE HWA BANRKUPTCY CASE, THE ADVERSARY PROCEEDING (INCLUDING ANY AND ALL CLAIMS THAT WERE OR THAT COULD HAVE BEEN RAISED), BCB LAWSUIT, OR ANY OTHER HWA BANKRUPTCY CASE RELATEDACTION.

9.    **Time of the Essence.**  Time is of the essence in the performance of all of the Settling Parties' obligations hereunder.

10.   **Jurisdiction**.  The Bankruptcy Court shall have exclusive jurisdiction to enforce the terms of this Settlement Agreement.

11.   **Good Faith**.  These settlement negotiations have been undertaken by the Settling Parties in good faith and for settlement purposes only, and neither this Settlement Agreement nor any evidence of negotiations hereunder, shall be offered or received in evidence in any action or proceeding for any purpose, other than in an action or proceeding to enforce this Settlement Agreement or in any action or proceeding brought by any party other than a Settling Party against any of the Settling Parties.

12.   **Only Written Agreements and Amendments**.  In the event that any subsequent negotiations between the Settling Parties are commenced in connection with this Settlement Agreement, the Settling Parties agree that no one shall be bound by any agreement on any issues until (a) agreement is reached on all issues; and (b) agreement on all issues has been reduced to a written agreement signed by all of the Settling Parties.  The Settling Parties agree that this Settlement Agreement may only be amended by a written document signed by all of the Settling Parties.

13.   **Entirety of Agreement**.  This Settlement Agreement contains the entire, complete, and integrated statement of each and every term and provision agreed to, by and among the Settling Parties hereto, and it is not subject to any condition not provided for herein.

14.   **Divisions and Headings.** The division of this Settlement Agreement into sections and subsections and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Settlement Agreement.

**15.** **Choice of Law**.  This Settlement Agreement shall be construed under and interpreted in accordance with the laws of the State of Florida.

**16.** **Severability of Provisions.**  If any provision of this Settlement Agreement shall be held invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions of this Settlement Agreement shall not be impaired thereby.

**17.** **Attorneys' Fees.**  To the extent allowed by the documents and applicable law, if any action or proceeding is brought to enforce or interpret this Settlement Agreement, the prevailing party, in addition to all other legal or equitable remedies possessed, shall be entitled to be reimbursed for all costs and expenses, including reasonable attorneys' fees incurred by reason of such action or proceeding.

**18.** **Successors and Assigns.**  This Settlement Agreement will be binding upon and inure to the benefit of the parties hereto and their respective permitted successors, assigns, heirs, devisees, executors, administrators, affiliates, representatives, assigns, officers, Trustees, and employees wherever the context requires or admits.

**19.** **Construction**.  None of the Settling Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

**20.** **Representations and Warranties.**  Each individual executing this Settlement Agreement represents and warrants that he or she is duly authorized to execute this Settlement Agreement, has all requisite power, authority, and approval required to enter into, execute, and deliver this Settlement Agreement, including the releases given in this agreement, has read this Settlement Agreement, fully knows and understands its contents, voluntarily executed this Settlement Agreement, and has had the opportunity to consult with counsel before executing this Settlement Agreement.

**21.** **Counterparts**.  This Settlement Agreement may be executed in any number of counterparts, each of which shall be an original and enforceable against any party who signed it, but all of which together shall constitute one and the same document.

**IN WITNESS WHEREOF**, the Settling Parties have executed this Settlement Agreement as of the date appearing on the first page of this Settlement Agreement.


**INTENTIONALLY LEFT BLANK, SIGNATURES TO FOLLOW**

**FINEMARK NATIONAL BANK & TRUST**

By: _Robert M. Arnall_

Its: _Executive Vice President_


STATE OF FLORIDA       )
                       ) ss.
COUNTY OF _Lee_        )


    The foregoing instrument was acknowledged before me this _25_ day of _April_ , 2016, by _Robert M. Arnall_ , as _EVP_ of FINEMARK NATIONAL BANK & TRUST [✓] who is personally known by me; or ~~[ ] who is not personally known to me and who produced~~ _____ as identification.

    (SEAL)

Notary Public
State of Florida
My Commission Expires:

MARY JO MASQUELIER
Commission # FF 932971
Expires December 18, 2019
Bonded Thru Troy Fain Insurance 800-385-7019

**FIFTH THIRD MORTGAGE COMPANY**

By: _____

Brad Griffith
Its: _____
Vice President

STATE OF _Ohio_ )
) ss.
COUNTY OF _Hamilton_ )

The foregoing instrument was acknowledged before me this _25th_ day of _April_, 2016, by _Brad Griffith_, as _Vice President_ of FIFTH THIRD MORTGAGE COMPANY [X] who is personally known by me; or [ ] who is not personally known to me and who produced _____ as identification.

(SEAL)

JESSICA PARDUE
Notary Pubic, State of Ohio
My Commission Expires
July 17, 2019

Notary Public
State of Ohio
My Commission Expires:

**BRANCH BANKING & TRUST COMPANY**

By: _~~~~ _Jung A. Big~~~~_ SVP

Its: _GREGORY A. BIEGEL, SENIOR VICE PRESIDENT_

STATE OF FLORIDA                    )
                                    ) ss.
COUNTY OF _Pinellas_                )

The foregoing instrument was acknowledged before me this _22nd_ day of _APRIL_, 2016, by _Gregory A. Biegel_, as _SVP_ of BRANCH BANKING & TRUST COMPANY [X] who is personally known by me; or [ ] who is not personally known to me and who produced _____ as identification.

(SEAL)

```
TAMMY LYNCH
Notary Public, State of Florida
Commission# FF 92086
My comm. expires Mar. 21, 2018
```

_Tammy Lynch_
Notary Public
State of Florida
My Commission Expires:

**LEAST, LLC**

By: ~~Suzann albright~~

Its: ~~Member~~

STATE OF ____FL____ )
                     ) ss.
COUNTY OF ____Lee____ )

    The foregoing instrument was acknowledged before me this _22_ day of ____April____, 2016, by ____Suzann Albright____, as _member_ of LEAST, LLC [ ] who is personally known by me; or [X] who is not personally known to me and who produced ____Michigan DL____ as identification.

    (SEAL)

MAXIMILLIAN SHORT
Notary Public, State of Florida
Commission# FF 167534
My comm. expires Oct. 9, 2018

_____
Notary Public
State of _FL_
My Commission Expires: _10/9/18_

**TARPHUNT, LLC**

By: _H. A_____

Its: _MEMBER_____


STATE OF ___FL_____ )
                                              ) ss.
COUNTY OF ___Lee_____ )


The foregoing instrument was acknowledged before me this _22_ day of ___April_____, 2016, by _Harry Albright Jr_, as _____ of TARPHUNT, LLC [ ] who is personally known by me; or [X] who is not personally known to me and who produced _Michigan DL_____ as identification.

(SEAL)

MAXIMILLIAN SHORT
Notary Public, State of Florida
Commission# FF 167534
My comm. expires Oct. 9, 2018

_____
Notary Public
State of _FL_____
My Commission Expires: _10/9/18_

**FMIRE, INC.**

By: _Suzann albright_

Its: _president_

STATE OF _FL_ )
) ss.
COUNTY OF _Lee_ )

The foregoing instrument was acknowledged before me, this _22_ day of _April_, 2016, by _SUZANN ALBRIGHT_, as _President_ of FMIRE, INC. [ ] who is personally known by me; or [X] who is not personally known to me and who produced _MIDL_ as identification.

(SEAL)

MAXIMILLIAN SHORT
Notary Public, State of Florida
Commission# FF 167534
My comm. expires Oct. 9, 2018

Notary Public,
State of _FL_
My Commission Expires: _10/9/18_

**STICHTER, RIEDEL, BLAIN & POSTLER, P.A.,**

By: _____

Its: _____


STATE OF FLORIDA ⟩
⟩ ss.
COUNTY OF HILLSBOROUGH ⟩

    The foregoing instrument was acknowledged before me this 22nd day of _____April_____, 2016, by _Daniel R Fogarty_, as _____ of STICHTER, RIEDEL, BLAIN & POSTLER, P.A., [✓] who is personally known by me; or [ ] who is not personally known to me and who produced _____N/A_____ as identification.

    (SEAL)

                _Mary S Brown_____
                Notary Public
                State of Florida
                My Commission Expires:

MARY S. BROWN
Commission # FF 233396
Expires July 23, 2019
Bonded Thru Troy Fain Insurance 800-385-7019

**SUZANN F. ALBRIGHT**

By: _Suzann f albright_

STATE OF ___FL___ )
                          ) ss.
COUNTY OF ___Lee___ )

The foregoing instrument was acknowledged before me this ___22___ day of
___April___, 2016, by ___SUZANN ALBRIGHT___ as ___N/A___ of SUZANN F.
ALBRIGHT [  ] who is personally known by me; or [X] who is not personally known to me and
who produced ___MI DL___ as identification.

(SEAL) MAXIMILLIAN SHORT
Notary Public, State of Florida
Commission# FF 167534
My comm. expires Oct. 9, 2018

_____
Notary Public
State of ___FL___
My Commission Expires: _10/9/18_

**HARRY W. ALBRIGHT, JR.**

By: _____

STATE OF _____FL_____ )
                        ) ss.
COUNTY OF _____Lee_____ )

The foregoing instrument was acknowledged before me this ⟨22⟩ day of ____April____, 2016, by _HARRY ALBRIGHT_, as _N/A_ of HARRY W. ALBRIGHT, JR. [ ] who is personally known by me; or [X] who is not personally known to me and who produced ____MFDL____ as identification.

(SEAL)

MAXIMILLIAN SHORT
Notary Public, State of Florida
Commission# FF 187534
My comm. expires Oct. 9, 2018

_____
Notary Public
State of ___FL___
My Commission Expires: 10/9/18

**SUZANN F. ALBRIGHT REVOCABLE TRUST DATED 12/21/2010**

By: _Suzann f albright_

Its: _owner_

STATE OF _FL_ )
                  ) ss.
COUNTY OF _Lee_ )

      The foregoing instrument was acknowledged before me this _22_ day of _____April_____, 2016, by _Suzann Albright_, as _Owner_ of SUZANN F. ALBRIGHT REVOCABLE TRUST DATED 12/21/2010 ~~who is personally known by me;~~ or [X] who is not personally known to me and who produced _MSDL_ as identification.

(SEAL) MAXIMILLIAN SHORT
Notary Public, State of Florida
Commission# FF 167534
My comm. expires Oct. 9, 2018

_____
Notary Public
State of _FL_
My Commission Expires: _10/9/18_

**BCB TARPON, LLC**

By: _____

Its: _____

STATE OF FLORIDA ⎫
⎬ ss.
COUNTY OF _Collier_ ⎭

The foregoing instrument was acknowledged before me this _25_ day of _April_, 2016, by _Timothy C. Weidle_ as _____ of BCB TARPON, LLC [✗] who is personally known by me; or [ ] who is not personally known to me and who produced _____ as identification.

(SEAL)

_____
Notary Public
State of Florida
My Commission Expires:

MARY ANN BONNICI
Commission # FF 133016
Expires July 28, 2018
Bonded Thru Troy Fain Insurance 800-385-7019

**PHILIP VON KALHE**
**for the estate of HWA Properties, Inc.**

By: _____
    Philip von Kahle

STATE OF FLORIDA        )
                        ) ss.
COUNTY OF BROWARD       )

    The foregoing instrument was acknowledged before me this 2 6th day of ~~February~~, APRIL 2016, by Philip von Kahle, as Chapter 11 Trustee for the estate of HWA Properties, Inc. [✓] who is personally known by me; or [　] who is not personally known to me and who produced _____ as identification.

(SEAL)

NADIRA JOSEPH
Notary Public - State of Florida
My Comm. Expires Dec 11, 2017
Commission # FF 075791
Bonded Through National Notary Assn.

Notary Public
State of Florida
My Commission Expires: 12-11-2017

**DAVID F. DAVIS AS TRUSTEE FOR THE DAVIS LENDERS**

By: _David F. Davis_

Its: _TRUSTEE_

STATE OF FLORIDA )
                               ) ss.
COUNTY OF _LEE_  )

The foregoing instrument was acknowledged before me this _25th_ day of _April 25_, 2016, by _DAVID F. DAVIS_, as _TRUSTEE_ of DAVID F. DAVIS AS TRUSTEE FOR THE DAVIS LENDERS [✓] who is personally known by me; or [ ] who is not personally known to me and who produced _____ as identification.

(SEAL)



Notary Public
State of Florida
My Commission Expires:

JEFFREY W. LEASURE
Commission # FF 124678
Expires July 17, 2018
Bonded Thru Troy Fain Insurance 800-385-7019

**HENRY R. BLOCK AS TRUSTEE FOR THE DAVIS LENDERS**

By: *[signature]*

Its: ___TRUSTEE___

STATE OF FLORIDA )
                         ) ss.
COUNTY OF _MIAMI DADE_ )

        The foregoing instrument was acknowledged before me this 25th day of _april_ , 2016, by _Henry R. Block_ , as _Trustee_ of HENRY R. BLOCK AS TRUSTEE FOR THE DAVIS LENDERS [ ] who is personally known by me; or [ ] who is not personally known to me and who produced _____ as identification.

        (SEAL)

*[signature]*
Notary Public
State of Florida
My Commission Expires:

Page **23** of **29**

**ALLIED CAPITAL CORPORATION**

By: _____

Its: _Presiden_t_____

STATE OF FLORIDA         )
                                  ) ss.

COUNTY OF _Lee_____  )

       The foregoing instrument was acknowledged before me this _22_ day of ___April____, 2016, by _HARRY ALBRIGHT_, as _President_ of Allied Capital Corporation [ ] who is personally known by me; or [X] who is not personally known to me and who produced ___MIDL_____ as identification.

  (SEAL)


MAXIMILLIAN SHORT
Notary Public, State of Florida
Commission# FF 167534
My comm. expires Oct. 9, 2018

Notary Public
State of Florida
My Commission Expires: _10/9/18_

**RV HUNT, LLC**

By: _____

Its: _MEMBER_____


STATE OF FLORIDA      )
                             ) ss.
COUNTY OF _Lee_____  )

     The foregoing instrument was acknowledged before me this _22_ day of _April_____, 2016, by _HARRY ALBRIGHT_, as _Member_ of RV Hunt, LLC [ ] who is personally known by me; or [X] who is not personally known to me and who produced _MIDL_____ as identification.

(SEAL) MAXIMILLIAN SHORT
Notary Public, State of Florida
Commission# FF 167534
My comm. expires Oct. 9, 2018

_____
Notary Public
State of Florida
My Commission Expires: _10/9/18_

SALB, LLC

By: _Suzann albright_

Its: _member_

STATE OF FLORIDA )
                 ) ss.
COUNTY OF _Lee_ )

The foregoing instrument was acknowledged before me this _22_ day of _April_, 2016, by _SUZANN ALBRIGHT_ as _member_ of SALB, LLC [ ] who is personally known by me; or [X] who is not personally known to me and who produced _MIDL_ as identification.

(SEAL)   MAXIMILLIAN SHORT
         Notary Public, State of Florida
         Commission# FF 167534
         My comm. expires Oct. 9, 2018

Notary Public
State of Florida
My Commission Expires: _10/9/18_

**HAS OPERATING 2, LLC**

By: _Suzann albright_

Its: _member_

STATE OF FLORIDA    )
            ) ss.
COUNTY OF _Lee_   )

   The foregoing instrument was acknowledged before me this _22_ day of _April_, 2016, by _Suzann ALBRIGHT_, as _Member_ of HAS Operating 2, LLC [ ] who is personally known by me; or [X] who is not personally known to me and who produced _MIDL_ as identification.

(SEAL)  MAXIMILLIAN SHORT
Notary Public, State of Florida
Commission# FF 167534
My comm. expires Oct. 9, 2018

_____
Notary Public
State of Florida
My Commission Expires: _10/9/18_

**PATKEN CONSTRUCTION MANAGEMENT, INC.**

By: _Suzann aelbright_

Its: _Secretary_

STATE OF FLORIDA    )
          ) ss.
COUNTY OF ___Lee___  )

   The foregoing instrument was acknowledged before me this _22_ day of ___April___, 2016, by ___Suzann Albright___ as ___Secretary___ of Patken Construction Management, Inc. [ ] who is personally known by me; or [X] who is not personally known to me and who produced ___MIDL___ as identification.

(SEAL) **MAXIMILLIAN SHORT**
Notary Public, State of Florida
Commission# FF 167534
My comm. expires Oct. 9, 2018

Notary Public
State of Florida
My Commission Expires: _10/9/18_

**WESTNEDGE SQUARE, LLC**

By: _Suzon albright_

Its: _Member_


STATE OF FLORIDA      )
                      )  ss.
COUNTY OF _Lee_       )

    The foregoing instrument was acknowledged before me this __22__ day of ___April___, 2016, by __SUZANN ALBRIGHT__, as __Member__ of Westnedge Square, LLC [ ] who is personally known by me; or [X] who is not personally known to me and who produced __MIDL__ as identification.

(SEAL) MAXIMILLIAN SHORT
Notary Public, State of Florida
Commission# FF 167534
My comm. expires Oct. 9, 2018

Notary Public
State of Florida
My Commission Expires: _10/9/18_

# EXHIBIT A

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR LEE
COUNTY, FLORIDA                                          CIVIL ACTION

PART (1)

BCB TARPON, LLC, a Florida Limited
Liability Company,

    Plaintiff,

      v.                                    Case No. 09 - CA - 5375

HWA PROPERTIES, INC., a Michigan
Corporation, and HARRY W. ALBRIGHT, an
individual,

    Defendants.

**LEVY INVENTORY**
**(Items Levied on October 6, 2015)**

| Item No. | Color | Description | Condition |
|---|---|---|---|
| | | FILES | |
| 1. | Box 29 | Joint tax returns 2003/4/5 | |
| 2. | | - Labels | |
| 3. | | → H. Albright Final Statem 2009 | |
| 4. | | - 2009 HWA /Allied Capital /Platten | |
| 5. | | Tax Returns | |
| 6. | | - Family Photos | |
| 7. | | - Allied Envelopes | |
| 8. | | - Feb 26 2008 / Email /Map Plat of Reserve Condos | |
| 9. | | - Red File /Articles | |
| 10. | | - Red File Allied Capital | |
| 11. | | ( - Webpage | |
| 12. | | ( - Draft Documents/ | |
| 13. | Box | ( - Disney | |
| 14. | | → Red Files / Personal Documents | |
| 15. | | Intro Sept 30/2002 Standard Federal | |
| 16. | | - Red File / Aerial Maps of Cape Coral | |
| 17. | | - H. Albright Bible | |
| | | - 2007 Albright Joint Tax Returns | |

✭ (COMPUTERS AND iPAD IN EHLAUND'S CUSTODY) ✭

| Item No. | Color | Description | Condition |
|---|---|---|---|
| 18. | | • Aug 2007 H. Albright Financial Statement | |
| 19. | | • Oct. 31 2007 Global Cash Flow Statement H. Albright | |
| 20. | | • March 3 2004 / Document | |
| 21. | | • 2/24/2004 | |
| 22. | | • Additional Documents / Emails | |
| 23. | | • Savings Club Brochure | |
| 24. | | • Tarpon Point Site Maps | |
| 25. | | • 2003 / GEO SURVEY / | |
| 26. | | • 3/24/04 FAX / BOW FONTS | |
| 27. | | • Appraisal 2003 Tarpon | |
| 28. | | • Kalamazoo Nature Center Materials | |
| 29. | | • Disney Cruise Documents / Pictures / Folder | |
| 30. | | • Allied Capital File Folder | |
| 31. | | • Colonial Bank Statement HOA 12/24/2004 | |
| 32. | | ⌈ DISNEY CRUISE FOLDER | |
| 33. | | ⌊ OFFICE SUPPLIES | |
| 34. | | ⌈ Email from R. Johnston to | |
| 35. | | ⌊ S. Albright dule Sept. 22 2016 | |
| 36. | | ⌈ COMPUTER SOFTWARE | |
| 37. | | ⌊ FILES WITH DISKS + DOCUMENTS | |
| 38. | | ⌈ FINANCIAL DOCUMENTS FOR | |
| 39. | | ⌊ HOA | |
| 40. | | ⌈ S. Albright April 2015 Trust | |
| 41. | | ⌊ Statement | |
| 42. | | • List of Names | |
| 43. | | • Birthday Invitations | |
| 44. | | • Guest List for Birthday Sept. 2007 | |

• Handwritten Party Notes 2008
• Newspaper Articles [2]
• Brochures
• 2007 MEETING INFORMATION TARPON

| Item No. | Color | Description | Condition |
|---|---|---|---|
| 45. | | • Lot # with lender debt associated | |
| 46. | | • Letter from BCB to K. Wallace | |
| 47. | | • August 28 2007 / Financials | |
| 48. | | • BCB Homes RELASED FILES | |
| 49. | | • 11/27/2006 Lot Listing | |
| 50. | | • Promotional Materials Related to | |
| 51. | | Tarpon Points Area Sales | |
| 52. | | • Document Regarding Tarpon Financials | |
| 53. | | • J. Smallwood Fax 3/8/2005 | |
| 54. | | • HWA Fnchcial Doc/Lot Listing | |
| 55. | | • Vendor Ledger Undated / | |
| 56. | | • Fnancial List Signed Undated | |
| 57. | | • Multiples of Financial Information | |
| 58. | | • 3/5/2008 Charts of Lots | |
| 59. | | • 2/12/2008 Charts of the Lots + Articles | |
| 60. | | • 1031 Exchange Financial Documents / 1/27/2006 | |
| 61. | | 4-10-2008 / HWA Documents | |
| 62. | | 3-9-2009 / HWA Documents | |
| 63. | | • DRAFT /FLORIDA PRUDENTIAL REALTY LISTING | |
| 64. | | 9-14-2009 /HWA DOCUMENTS | |
| 65. | | • Email - 11-23-2011 | |
| 66. | | • Schedule D-7 Tarpon Point March 2010 | |
| 67. | | • Tarpon Annotated HOA Documents | |
| 68. | | • Labels | |
| 69. | | • Advanced Estate Planning Techniques | |
| 70. | | • Handwritten Bank Comparison AD 1998 -2004 | |
| 71. | | • Typed Bank Comparison | |
| | | JOHN SCHROEDER - Resume | |

3

| Item No. | Color | Description | Condition |
|---|---|---|---|
| 72. | BOXD | ° Newspaper Clipping | |
| 73. | | ° Feb. 28 2005 Emails | |
| 74. | | ° 000 Email H. Albright/S. Albno | |
| 75. | | ° Allied Capital + H. Albright Document | |
| 76. | | ° Certificate | |
| 77. | | ° Medical File/BCBS/H. Albright | |
| 78. | | ° Miscellaneous Labels | |
| 79. | | ° Letters/Notes to H. Albright 2013 | |
| 80. | | ° Bank Statement BOA Jan 2014 - 2000 H. Albright | |
| 81. | | ° Resolution/FMIRE Corp. Documents | |
| 82. | | ° S. Albright 4-25-14 Email | |
| 83. | | ° S. Albright Emails 2000 2014-2015 | |
| 84. | | ° S. Albright Computer Notes | |
| 85. | | ° Financial Spreadsheet 4-28-2014 | |
| 86. | | ° 6/8/2005 - HOA Documents | |
| 87. | | ° HOA Documents | |
| 88. | | ° Budget Documents | |
| 89. | | ° Invoices | |
| 90. | | ° Business Documents H. Albright | |
| 91. | | ' H. Albright Owner Designer | |
| 92. | | ° Invoices 3/4/2005 | |
| 93. | | ° Signed Business Proposal | |
| 94. | | ° Vehicle Documents | |
| 95. | | ° Bentley Documents | |
| 96. | | ° Transponder Documents | |
| 97. | | ° Invoices HWA / H. Albrights | |
| 98. | | ° Jaguar Documents / Renewal 2001 | |
| | | ° Jaguar Invoices | |
| | | ° 4/28/2006  4 | |
| | | ° Jaguar 2005 | |

| Item No. | Color | Description | Condition |
|---|---|---|---|
| 99. | | • Cashier's Checks to H. Albright | |
| 100. | | • Emails | |
| 101. | | • Handwritten Notes Re: Sales by H. Albright | |
| 102. | | • Corvette Sale 2/1/2005 | |
| 103. | | • H. Albright's Phone Purchase in S. Albright's Name | |
| 104. | | • Phone Contracts | |
| 105. | | • 5/3/2007 Bentley Invoices | |
| 106. | | • 1/19/2006 – Vehicle Registration Bentley | |
| 107. | | • Cadillac Related Invoices March 2006 | |
| 108. | | • Tag Renewal | |
| 109. | | • Envelope with Insurance Cards for Cars (multiple) | |
| 110. | | • Tag/Purchase Orders from Roger Dean | |
| 111. | | • Bentley May 2014/& May 2015 Tag/Insurance It | |
| 112. | | • 1/4/00 | |
| 113. | | • Gulf Harbor Files/Documents | |
| 114. | | • 3/17/1899 WCI Letter | |
| 115. | | • H. Albright Handwritten Notes | |
| 116. | | • 1996 Letter Re: Gulf Harbor HOA | |
| 117. | | • Albright Document 1995 | |
| 118. | | • Edgewater Budget 1996 | |
| 119. | | • 12/21/1995 Rules + Regulation | |
| 120. | | • H. Albright Personal Document | |
| 121. | | • H. Albright Tax Documents | |
| 122. | | • HWA Checks | |
| 123. | | • Birth/Marriage Certificates | |
| 124. | | • Death Certificates | |
| 125. | | • BMW Subfile | |
| | | • Bentley Subfile | |
| | | • Tax Documents Related to Vehicles | |

| Item No. | Color | Description | Condition |
|---|---|---|---|
| 126. | | 2003/2004 Insurance Cards 1926 NASH CAR | |
| 127. | | Bill of Sale 3/12/2013 NASH - $50K | |
| 128. | | 2012 Documents Related to Bentley / BMW | |
| 129. | | Emails Related to Cars | |
| 130. | | Documents Related to Parents' Vehicles | |
| 131. | | Warranties / & Maintenance Records Related | |
| 132. | | to H. Albrights' Family Vehicles | |
| 133. | | 3/2010 Car Invoice | |
| 134. | | March 2006 Jaguar Document | |
| 135. | | H. Albright Letters | |
| 136. | | CD-Rom with CORPORATE INFORMATION | |
| 137. | | 2000 Tags / Pet Information | |
| 138. | | Dec. 2014 USPS Information | |
| 139. | | Osprey Landing File 2010-2012 | |
| 140. | | Envelope with Nov. 2010 Notes | |
| 141. | | Invoices | |
| 142. | | Email Nov. 2014 to S. Albright | |
| 143. | | Emails to S. Albright 2012 | |
| 144. | | Art Related Documents | |
| 145. | | Certificate of Authenticity Edna Hibbell | |
| 146. | | Invoices 2015 | |
| 147. | | Work Orders 5/2/2013 | |
| 148. | | 2/21/1? | |
| 149. | | Chase Notice 1/1/13 | |
| 150. | | H. Albright Email 2/15 | |
| 151. | | Personal Financial Items 2002 / H.A. | |
| 152. | | Pest Control / Invoices 2010, 2011, 2012 | |

Receipts 2/13/2014

| Item No. | Color | Description | Condition |
|---|---|---|---|
| 153. | | Invoice 2007, 2008, 2009, 2010 | |
| 154. | | Allied Capital check 2006 | |
| 155. | | * Remainder (~ 50% of Box NOT | |
| 156. | | Reviewed at Request of | |
| 157. | | R. Johnston | |
| 158. | | | |
| 159. | | | |
| 160. | | | |
| 161. | | | |
| 162. | | | |
| 163. | | | |
| 164. | | | |
| 165. | | | |
| 166. | | | |
| 167. | | Box 47 - Bags (with CAR KEY) | |
| 168. | | | |
| 169. | | | |
| 170. | | Box 42 - DVD   Wii Player / Speakers | |
| 171. | | TV Wires, Sound System | |
| 172. | | | |
| 173. | | Box 37  ° Armani Watch / Ring / Diamond Ring | |
| 174. | | ° All Other Watches | |
| 175. | | ° Male Watches | |
| 176. | | ° Panerai      ° Rousseu | |
| 177. | | ° Xezo          ° Panerai #2 | |
| 178. | | ° Tag Heur     ° Quorum | |
| 179. | | ° Gerald Gentos  ° Multiple Cartier Watch | |

° Bentley        ° Panera #3
° Rolex

| Item No. | Color | Description | Condition |
|---|---|---|---|
| 180. | Box 64 | • Picture #7890 | |
| 181. | | • Paintings (Multiple) | |
| 182. | | • Wood Carvings | |
| 183. | | | |
| 184. | Box | | |
| 185. | 61 | TOASTER OVEN | |
| 186. | | | |
| 187. | Box 51 | • Carving / Ivory | |
| 188. | | • Clothing | |
| 189. | | • Watch Battery | |
| 190. | | | |
| 191. | | | |
| 192. | Box 63 | Remote Controls | |
| 193. | | + Carving | |
| 194. | | | |
| 195. | | | |
| 196. | Box | • Musical Black Enamel | |
| 197. | 58 | • Crystal Music Ball | |
| 198. | | • Eggs | |
| 199. | | • Hummingbird Music Box | |
| 200. | | • Ceramic Collectible | |
| 201. | | • Ceramic Music Box | |
| 202. | | | |
| 203. | Box 41 | • Bills of Sale | |
| 204. | | • Documents | |
| 205. | | • FINE MARK DOCUMENTS | |
| 206. | | • Emails | |

• Spreadsheets
• Financial Documents?
• 2014 / 2015 Documents

| Item No. | Color | Description | Condition |
|---|---|---|---|
| 207. | | ✱Original Checks | |
| 208. | | • HWA Document | |
| 209. | | (R. Johnston independently | |
| 210. | | reviewed documents and ° | |
| 211. | | refused to review further / inventory despite | |
| 212. | | being offered opportunity) | |
| 213. | | | |
| 214. | | | |
| 215. | | | |

DATED this ____ day of October, 2015.


By:_____
   **David Kerem, Esq.**
   Coleman, Yovanovich & Koester, P.A.
   4001 Tamiami Trail North, Suite 300
   Naples, FL  34103
   239.435.3535
   dkerem@cyklawfirm.com
   *Counsel for BCB Tarpon, LLC*


By:_____     By:_____
   **Richard M. Marchewka, Esq.**          **Richard Johnston, Jr., Esq.**
   Marchewka Law Firm                      Johnston Law, PLLC
   1601 Jackson Street, Suite 203          7370 College Parkway, Suite 207
   Fort Myers, FL  33901                   Fort Myers, FL  33907
   239.337.1777                            239.600.6200
   239.337.7778 Fax                        877.727.4513 Fax
   rick@marchewkalaw.com                   richard@richardjohnstonlaw.com
   *Counsel for Harry W. Albright*         *Co-counsel for Suzann Albright*

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR LEE
COUNTY, FLORIDA                                                    CIVIL ACTION

PART 2

BCB TARPON, LLC, a Florida Limited
Liability Company,

    Plaintiff,

    v.                                              Case No. 09 - CA - 5375

HWA PROPERTIES, INC., a Michigan
Corporation, and HARRY W. ALBRIGHT, an
individual,

    Defendants.

## LEVY INVENTORY
### (Items Levied on October 6, 2015)

| Item No. | Color | Description | Condition |
|---|---|---|---|
| 1. | | Box 58 / Cont'd | |
| 2. | | | |
| 3. | | ○ Carousel Musical | |
| 4. | | ○ Musical Box Crystal | |
| 5. | | ○ Musical Box – Birthday Theme | |
| 6. | | ○ Bid Nest Music Box | |
| 7. | | ○ Christmas Musical Figurine | |
| 8. | | ○ Organ Grinder Musical Box | |
| 9. | | ○ Religious Box / Musical | |
| 10. | | ○ Ceramic Jewelry Box Musical | |
| 11. | | ○ Organ Musical Box | |
| 12. | | ○ Swiss Musical Box | |
| 13. | | ○ R&R Ceramic Musical Box | |
| 14. | | ○ Silver Piano Case | |
| 15. | | ○ Transluecent Glass Musical Box | |
| 16. | | ○ Angel Cerman Musical Box | |
| 17. | | ○ Happy Birthday Musical Box | |
| | | ○ Birds Nest Musical Box (Porc.) | |

1

| Item No. | Color | Description | Condition |
|---|---|---|---|
| 18. | | • Horse Ceramic Musical Box | |
| 19. | | • Madonna Ceramic Egg | |
| 20. | | • Santa + Bear Ceramic | |
| 21. | | • Butterfly to Egg /Musical Box | |
| 22. | | • Ceramic Piano Music Box | |
| 23. | | • Silver Piano/Heart Musical Box | |
| 24. | | | |
| 25. | | | |
| 26. | Box 3B | • Projector | |
| 27. | | • TV Pro itself | |
| 28. | | (minus laptop 4 Ipam – removed by c-vendor) | |
| 29. | | | |
| 30. | Box S2 | | |
| 31. | | — Printer Computer | |
| 32. | | — Monitor (Computer) | |
| 33. | | | |
| 34. | | | |
| 35. | Box 4 | VELODYNE | |
| 36. | | — Sub-Woofer | |
| 37. | | | |
| 38. | | | |
| 39. | Box 4 | Golf Stand | |
| 40. | | | |
| 41. | | | |
| 42. | Box SS | Marble Table | |
| 43. | | | |
| 44. | Box 31 | — H. Albright Clothing | |

| Item No. | Color | Description | Condition |
|---|---|---|---|
| 45. | | | |
| 46. | 34+35 | — Speaker | |
| 47. | | | |
| 48. | | | |
| 49. | 32+33 | Speaker | |
| 50. | | | |
| 51. | Box Box | | |
| 52. | 8 65 | Wooden Floor lamp | |
| 53. | | | |
| 54. | | | |
| 55. | Box 8 | — Carved Wooden Chair | |
| 56. | | | |
| 57. | Box | | |
| 58. | 59 | Painting | |
| 59. | | | |
| 60. | Box | | |
| 61. | 62 | Mirror / Living Room | |
| 62. | | | |
| 63. | | | |
| 64. | Box | Wall Street Journal Painting | |
| 65. | 60 | | |
| 66. | Box | | |
| 67. | 53 | — Flat Screen TV | |
| 68. | | | |
| 69. | | | |
| 70. | Box 36 | — H. Albright's Clothers + Bags | |
| 71. | | | |

| Item No. | Color | Description | Condition |
|---|---|---|---|
| 72. | | | |
| 73. | Box 43 + 44 | • Antique Deer/bull Mit | |
| 74. | | • Golf Clubs (#3 sets | |
| 75. | | + 1 empty bag) | |
| 76. | | • Hi Albright Clothing | |
| 77. | | | |
| 78. | Box 64 | Black Enamel Box | |
| 79. | | | |
| 80. | | | |
| 81. | Box 57 | Painting | |
| 82. | | | |
| 83. | Box 67 | Painting | |
| 84. | | | |
| 85. | | | |
| 86. | | | |
| 87. | | | |
| 88. | | | |
| 89. | | | |
| 90. | | | |
| 91. | | | |
| 92. | | | |
| 93. | | | |
| 94. | | | |
| 95. | | | |
| 96. | | | |
| 97. | | | |
| 98. | | | |

4

| Item No. | Color | Description | Condition |
|---|---|---|---|
| 99. | | | |
| 100. | | | |
| 101. | | | |
| 102. | | | |
| 103. | | | |
| 104. | | | |
| 105. | | | |
| 106. | | | |
| 107. | | | |
| 108. | | | |
| 109. | | | |
| 110. | | | |
| 111. | | | |
| 112. | | | |
| 113. | | | |
| 114. | | | |
| 115. | | | |
| 116. | | | |
| 117. | | | |
| 118. | | | |
| 119. | | | |
| 120. | | | |
| 121. | | | |
| 122. | | | |
| 123. | | | |
| 124. | | | |
| 125. | | | |

| Item No. | Color | Description | Condition |
|---|---|---|---|
| 126. | | | |
| 127. | | | |
| 128. | | | |
| 129. | | | |
| 130. | | | |
| 131. | | | |
| 132. | | | |
| 133. | | | |
| 134. | | | |
| 135. | | | |
| 136. | | | |
| 137. | | | |
| 138. | | | |
| 139. | | | |
| 140. | | | |
| 141. | | | |
| 142. | | | |
| 143. | | | |
| 144. | | | |
| 145. | | | |
| 146. | | | |
| 147. | | | |
| 148. | | | |
| 149. | | | |
| 150. | | | |
| 151. | | | |
| 152. | | | |

| Item No. | Color | Description | Condition |
|---|---|---|---|
| 153. | | | |
| 154. | | | |
| 155. | | | |
| 156. | | | |
| 157. | | | |
| 158. | | | |
| 159. | | | |
| 160. | | | |
| 161. | | | |
| 162. | | | |
| 163. | | | |
| 164. | | | |
| 165. | | | |
| 166. | | | |
| 167. | | | |
| 168. | | | |
| 169. | | | |
| 170. | | | |
| 171. | | | |
| 172. | | | |
| 173. | | | |
| 174. | | | |
| 175. | | | |
| 176. | | | |
| 177. | | | |
| 178. | | | |
| 179. | | | |

| Item No. | Color | Description | Condition |
|---|---|---|---|
| 180. | | | |
| 181. | | | |
| 182. | | | |
| 183. | | | |
| 184. | | | |
| 185. | | | |
| 186. | | | |
| 187. | | | |
| 188. | | | |
| 189. | | | |
| 190. | | | |
| 191. | | | |
| 192. | | | |
| 193. | | | |
| 194. | | | |
| 195. | | | |
| 196. | | | |
| 197. | | | |
| 198. | | | |
| 199. | | | |
| 200. | | | |
| 201. | | | |
| 202. | | | |
| 203. | | | |
| 204. | | | |
| 205. | | | |
| 206. | | | |

| Item No. | Color | Description | Condition |
|---|---|---|---|
| 207. | | | |
| 208. | | | |
| 209. | | | |
| 210. | | | |
| 211. | | | |
| 212. | | | |
| 213. | | | |
| 214. | | | |
| 215. | | | |

DATED this 26th day of October, 2015.

By: _____

**David Kerem, Esq.**
Coleman, Yovanovich & Koester, P.A.
4001 Tamiami Trail North, Suite 300
Naples, FL 34103
239.435.3535
dkerem@cyklawfirm.com
*Counsel for BCB Tarpon, LLC*

By: _____
**Richard M. Marchewka, Esq.**
Marchewka Law Firm
1601 Jackson Street, Suite 203
Fort Myers, FL 33901
239.337.1777
239.337.7778 Fax
rick@marchewkalaw.com
*Counsel for Harry W. Albright*

By: _____
**Richard Johnston, Jr., Esq.**
Johnston Law, PLLC
7370 College Parkway, Suite 207
Fort Myers, FL 33907
239.600.6200
877.727.4513 Fax
richard@richardjohnstonlaw.com
*Co-counsel for Suzann Albright*

# EXHIBIT B

HWA PROPERTIES, INC                                          38-3314103

# ELECTION AND CONSENT
## TO USE THE INTERIM CLOSING OF THE BOOKS METHOD

During this tax year ended DECEMBER 31, 2016 , a shareholder's entire interest in the
corporation was terminated. HWA PROPERTIES, INC
elects under IRC §1377(a)(2) and Reg. §1.1377-1(b) to have the rules provided in IRC §1377(a)(1) applied
as if the tax year consisted of two separate tax years. The corporation and each affected shareholder
whose signature appears below consent to this election, which is made with respect to the termination of
the entire interest of _____ , as follows:

Manner of Shareholder's Termination  _____

Date of Termination: 04/22/16

## SHAREHOLDER CONSENT

| Date | Shareholder Name | Signature | Taxpayer ID Number |
|------|------------------|-----------|--------------------|
|      | HARRY W. ALBRIGHT |          | ██████████ |
|      | SUZANN L. ALBRIGHT |         | ██████████ |
|      |                  |           |                    |
|      |                  |           |                    |
|      |                  |           |                    |
|      |                  |           |                    |
|      |                  |           |                    |
|      |                  |           |                    |
|      |                  |           |                    |
|      |                  |           |                    |
|      |                  |           |                    |
|      |                  |           |                    |
|      |                  |           |                    |
|      |                  |           |                    |
|      |                  |           |                    |
|      |                  |           |                    |
|      |                  |           |                    |
|      |                  |           |                    |

514711
04-01-15

# EXHIBIT C

# LOAN PURCHASE CONTRACT

THIS LOAN PURCHASE CONTRACT ("***Contract***"), is entered into as of the Effective Date (as hereinafter defined) by and between David F. Davis, as Trustee and not individually and Henry R. Block, as Trustee and not individually (collectively, "***Seller***") and BCB Tarpon, LLC, a Florida limited liability company ("***Purchaser***"). *Defined terms used herein but not immediately defined shall have the meanings ascribed to such terms elsewhere in this Contract.*

WHEREAS, Seller is the owner of the Loans and Loan Documents more particularly defined herein; and

WHEREAS Purchaser wishes to purchase, and Seller wishes to sell, all of Seller's right, title and interest in and to the Loan on terms more fully set forth herein.

For good and valuable consideration, the receipt and sufficiency of which are acknowledged by Seller and Purchaser, and in consideration of the mutual covenants set forth in this Contract, the parties hereto agree as follows:

1.  **Recitals; Sale and Purchase**

    (a)  The recitals set forth above are true and correct and are incorporated herein by this reference.

    (b)  Seller agrees to sell, convey, and assign to Purchaser, and Purchaser agrees to purchase and accept from Seller, for the Purchase Price (as hereinafter defined) on and subject to the terms and conditions set forth in this Contract, the following loan documents:

    **I. 2014 LOAN DOCUMENTS**

    (i)  That certain  Promissory Note dated July 14, 2014 in the principal amount of $1,400,000 executed by FMIRE, Inc., a Michigan corporation ("FMIRE") in favor of David F. Davis as Trustee, as to an undivided 45.492140% interest and Henry R. Block, as Trustee, as to an undivided 54.507860% interest ("2014 Note").

    (ii)  That certain Mortgage, Security Agreement and Assignment of Rents dated July 14, 2014 made by FMIRE in favor of David F. Davis, as Trustee and Henry R. Block, as Trustee ("2014 Mortgage").

    (iii)  That certain UCC Financing Statement.

    (iv)  That certain Absolute, Irrevocable, Unconditional, Unlimited and Continuing Guaranty of Suzann Albright.

    (v)  That certain Absolute, Irrevocable, Unconditional, Unlimited and Continuing Guaranty of Henry W. Albright.

(vi)     Old Republic Title Insurance Company Policy Number MF6-8114440.

## II.  2013 DOCUMENTS

(i)     That certain Promissory Note dated February 21, 2013 in the principal amount of $400,000 executed by FMIRE, Inc., a Michigan corporation ("FMIRE") in favor of David F. Davis, as Trustee ("*2013 Note*")..

(ii)     That certain Mortgage, Security Agreement and Assignment of Rents dated February 21, 2013 made by FMIRE in favor of David F. Davis, as Trustee.

(iii)     That certain Corrective Mortgage Security Agreement and Assignment of Rents dated as of February 21, 2013 made by FMIRE in favor of David F. Davis, as Trustee ("*2013 Mortgage*").

(iv)     That certain Mortgage Subordination Agreement dated August __, 2014 by and between David F. Davis, as Trustee and Henry R. Block as Trustee.

(v)     That certain Note Maturity Date Extension Agreement.

(vi)     That certain Second Note Maturity Extension Agreement dated.

(vii)     That certain Assignment of Mortgage, Corrective Mortgage and Mortgage Subordination Agreement dated March 2, 2016.

(viii)     That certain Allonge to Promissory Note and First and Second Note Maturity Extension Agreements made by David F. Davis, as Trustee, dated March 2, 2016.

(ix)     That certain Absolute, Irrevocable, Unconditional, Unlimited and Continuing Guaranty of Suzann Albright.

(x)     That certain Absolute, Irrevocable, Unconditional, Unlimited and Continuing Guaranty of Harry W. Albright.

(xi)     That certain UCC Financing Statement.

(xii)     Old Republic Title Insurance Company Policy Number MF6-8052897.

(c)     All of the instruments and documents described or referred to in Section II are collectively called the "*2013 Loan Documents*".  The indebtedness evidenced by the 2013 Note and the liens and rights under the 2013 Mortgage and/or the other 2013 Loan Documents are collectively called the "*2013 Loan*". All of the instruments and documents described or referred to in Section I are collectively called the "*2014 Loan Documents*."  The indebtedness evidenced by the 2014 Note and the liens and rights under the 2014 Mortgage and/or the other 2014 Loan Documents are collectively called the "*2014 Loan*." The 2013 Loan Documents and

the 2014 Loan Documents may be collectively referred to herein as the "***Loan Documents***" and the 2014 Loan and the 2013 Loan may be collectively referred to herein as the "***Loans.***" The real property encumbered by the 2014 Mortgage and the 2013 Mortgage may be collectively referred to as the "***Property***".

In connection with the acquisition of the Loans by Purchaser, Purchaser shall assume all ongoing obligations of Seller in connection with the Loans, if any.

**2.** **Purchase Price**

(a) The purchase price ("***Purchase Price***") to be paid by Purchaser to Seller for the Loans is One Million Nine Hundred Forty Thousand and no/100 Dollars ($1,940,000.00).

(b) The Purchase Price shall be payable in cash at the Closing (as hereinafter defined).

(c) Seller represents and warrants that, as of the date listed therein, the principal balances of the Loans are as set forth in **Schedule 1** of this Contract.

**3.** **Closing**

(a) The Closing ("***Closing***") of the transaction contemplated hereby shall occur through escrow on the date hereof (the "***Closing Date***").

(b) At the Closing, all of the following shall occur, all of which shall be deemed concurrent conditions:

(i) Seller, at Seller's sole cost and expense, shall deliver or cause the following to be delivered to Jeffery W. Leasure, Esq., ("Escrow Agent"):

(1) (a) To the extent the original Notes are available, then such Note(s) shall be endorsed by allonge as follows: "Pay To The Order Of _____ **[Purchaser]**, without recourse, representation or warranty, express or implied, except as specifically set forth in the Loan Purchase Contract"; or (b) To the extent one or more of the original Notes is not available, then Seller shall deliver to Purchaser an original executed Lost Note Affidavit together with a true and correct copy of such lost note;

(2) An original executed Assignment of Note, Mortgage and Loan Documents ("***Assignment of Mortgage***") for each of the Loans in the form of attached Exhibit "A", with all blanks appropriately completed;

(3) A closing statement (the "***Closing Statement***") for the transaction contemplated by this Contract, prepared by Escrow Agent, approved by the Seller and the Purchaser, executed by the Seller;

       (4)     The original Title Policies or related marked pro forma, and all endorsements thereto;

       (5)     Any UCC-3 form(s) required to evidence the transfer to Purchaser of any security interest held by Seller in the personalty included in the Property; and

       (6)     Such other instruments and documents necessary to consummate the transaction contemplated hereby in form and substance reasonably satisfactory to the Seller and Purchaser in connection with the purchase of the Loans.

(ii)     Purchaser, at Purchaser's sole cost, shall deliver or cause to be delivered to Escrow Agent the following:

       (1)     The Purchase Price in cash or immediately available wire transferred funds which Purchaser shall cause to be delivered to the Escrow Agent;

       (2)     The Closing Statement executed by the Purchaser; and

       (3)     Such other instruments and documents necessary to consummate the transaction contemplated hereby in form and substance reasonably satisfactory to the Seller and Purchaser in connection with the purchase of the Loans.

(iii)    Seller and Purchaser shall each pay their respective attorneys' fees. Purchaser shall pay all recording costs for the Assignments of Mortgage.

**4.**    **Seller's Representations, and Warranties**

(a)    Seller represents and warrants to Purchaser that:

(i)     Seller is the sole owner and holder of the Loan Documents;

(ii)    Seller has the right, power, legal capacity, and authority to execute and deliver this Contract and to consummate the transactions contemplated by this Contract. This Contract has been duly and validly executed and delivered by Seller;

(iii)    The individual or individuals executing this Contract and any and all documents contemplated hereby on behalf of Seller has or have the legal power, right, and actual authority to bind Seller to the terms and conditions contained in this Contract and in such documents;

(iv)    This Contract and the other documents and agreements contemplated hereby, assuming due authorization, execution and delivery hereof by the

Purchaser, constitute the valid, binding, and legal obligation of the Seller, each enforceable against the Seller in accordance with its terms;

(v)     As of the Closing, the information set forth on Schedule 1 is true and correct.

(vi)     To the best of Seller's knowledge, the Loan Documents provided or made available to Purchaser are true, correct and complete.

(viii)     To the best of Seller's knowledge, except as set forth in the Loan Documents, the Loans have not been satisfied, canceled, subordinated, rescinded or materially modified, and the Property has not been released from the lien of the Mortgages except as provided in the Official Records of Lee County, Florida.

(b)     All references to the "Knowledge" of Seller in this Contract shall refer only to the current and actual knowledge of the Seller Designated Person (as hereinafter defined), without inquiry, and shall not be construed, by imputation or otherwise, to refer to the knowledge of Seller or any affiliate of Seller or to any other officer, agent, manager, representative or employee of Seller or any affiliate thereof, or to impose upon the Seller Designated Person any duty to investigate the matter to which such actual knowledge, or the absence thereof, pertains.  As used herein, the term "***Seller Designated Person***" shall refer to the following person:  David F. Davis and Henry R. Block.  In no event shall Seller Designated Person have any personal liability under this Contract.

(c)     NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS CONTRACT, PURCHASER HEREBY ACKNOWLEDGES AND AGREES THAT EACH AND ALL OF THE REPRESENTATIONS OR WARRANTIES OF SELLER HEREIN SHALL BE SUBJECT TO EXCEPTION FOR ANY MATTER OR INFORMATION CONTAINED IN ANY DOCUMENTS AND INSTRUMENTS DELIVERED TO PURCHASER BY SELLER PRIOR TO THE CLOSING DATE.  PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT, NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS CONTRACT, NO CLAIM FOR A BREACH OF A REPRESENTATION OR WARRANTY SHALL BE ACTIONABLE, PAYABLE OR GIVE RISE TO ANY RIGHT, CLAIM OR DEFENSE ON THE PART OF PURCHASER:  (I) AT ANY TIME IF THE BREACH IN QUESTION RESULTS FROM OR IS BASED ON A CONDITION, STATE OF FACTS OR OTHER MATTER WITH RESPECT TO WHICH PURCHASER HAS ACTUAL KNOWLEDGE (IT BEING AGREED THAT PURCHASER WILL BE DEEMED TO HAVE ACTUAL KNOWLEDGE OF ANY DOCUMENT LISTED AS AN EXCEPTION IN A TITLE INSURANCE COMMITMENT OBTAINED BY PURCHASER WITH RESPECT TO THE PROPERTY) ON OR PRIOR TO THE CLOSING. THE PROVISIONS OF THIS SECTION 4 SHALL ONLY SURVIVE FOR A

PERIOD OF ONE HUNDRED TWENTY (120) DAYS AFTER CLOSING (THE "*SURVIVAL PERIOD*").

5.    **Representations, Warranties and Agreements of the Purchaser**

The Purchaser hereby makes the following representations, warranties and agreements, which shall have been deemed to have been made as of the Closing Date:

(a)    The Purchaser is acquiring the Loans for its own account only and not for any other Person.

(b)    The Purchaser considers itself a substantial, sophisticated investor having such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of investment in the Loans and is in the business of acquiring commercial real estate loans for investment and other purposes.

(c)    The Purchaser has been furnished with all information regarding the Loans which it has requested, including, without limitation, the Loan Documents.

(d)    Neither the Purchaser nor anyone acting on its behalf has offered, transferred, pledged, sold or otherwise disposed of the Loans, any interest in the Loans or any other similar security to, or solicited any offer to buy or accept a transfer, pledge or other disposition of the Loans, any interest in the Loans or any other similar security from, or otherwise approached or negotiated with respect to the Loans, any interest in the Loans or any other similar security with, any person in any manner, or made any general solicitation by means of general advertising or in any other manner, or taken any other action that would constitute a distribution of the Loans under the Securities Act of 1933, as amended (the "*Securities Act*"), or that would render the disposition of the Loans a violation of Section 5 of the Securities Act or require registration pursuant thereto, nor will it act, nor has it authorized or will it authorize any person to act, in such manner with respect to the Loans.

(e)    Consistent with Section 8 below, Purchaser has not dealt with any broker, investment banker, agent or other person, except the Broker (as defined herein), who may be entitled to any commission or compensation in connection with the sale of the Loans.

(f)    Purchaser acknowledges and agrees that, except as expressly set forth in this Contract, the Loans are being sold on an "as is" "where is" and "with all faults" basis on the terms and conditions herein set forth.

(g)    Purchaser represents that it has full power and authority and has taken all action necessary to authorize it to enter into and perform its obligations under this Contract and all other documents or instruments contemplated hereby. Purchaser represents and warrants that this Contract has been duly authorized, executed and delivered by Purchaser. This Contract constitutes the legal, valid and binding obligation of Purchaser, enforceable in accordance with its terms. Purchaser

represents and warrants that the execution, delivery and performance of this Contract by Purchaser does not conflict with the organizational documents of Purchaser, or with any law, statute or regulation applicable to Purchaser, or any mortgage, indenture or other contract or agreement to which Purchaser is a party.

6.    **Recording By Purchaser**

Purchaser shall, as soon as practicable following Closing, but in no event more than ten (10) days after the Closing Date file and record, in the appropriate public offices, the Assignments of Mortgage and any other documents which are required to properly evidence the assignment contemplated by this Contract and to properly perfect Purchaser's interest in the assets and interests purchased hereunder or as may be required for any other reason by any applicable law, statute, ordinance, order, finding, decree, rule or regulation.

7.    **Post-Closing Duties / Obligations**

Effective at Closing, Purchaser hereby assumes and shall undertake, comply with and discharge all duties and obligations of Seller under any applicable law, statute, ordinance, order finding, decree, rule or regulation and all obligations under all the applicable Loan Documents with respect to all the Loans and Property, including without limitation such duties and obligations pertaining to unfair credit collection practices. This Section 7 and all other Sections that contain or relate to obligations to be performed or satisfied post-Closing on the part of either the Seller or the Purchaser shall survive Closing.

8.    **Brokerage Commissions**

Each party agrees that should any claim be made for brokerage commissions or finder's fees by any broker or finder by, through or on account of any acts of said party or its representatives, said party will hold the other party free and harmless from and against any and all loss, liability, cost, damage and expense in connection therewith.

9.    **Disclaimers**

PURCHASER AGREES THAT IT HAS PERFORMED EXAMINATIONS AND INVESTIGATIONS OF THE LOANS AND THAT, EXCEPT AS EXPRESSLY SET FORTH HEREIN OR IN THE TRANSACTION DOCUMENTS DELIVERED AT CLOSING, PURCHASER WILL RELY SOLELY UPON SUCH EXAMINATIONS AND INVESTIGATIONS IN PURCHASING THE LOANS. NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, IT IS EXPRESSLY UNDERSTOOD AND AGREED THAT, EXCEPT AS EXPRESSLY SET FORTH HEREIN OR IN THE TRANSACTION DOCUMENTS DELIVERED AT CLOSING, PURCHASER IS PURCHASING THE LOANS "AS IS" WITHOUT RECOURSE AND WITH ALL FAULTS AND THAT SELLER IS MAKING NO REPRESENTATIONS OR WARRANTIES, WHETHER EXPRESS OR IMPLIED, BY OPERATION OF LAW OR OTHERWISE, WITH RESPECT TO THE QUALITY, CONDITION OR VALUE OF THE LOANS OR THE PROPERTY, THE LEGALITY, VALIDITY, SUFFICIENCY

OF ANY LOAN DOCUMENT OR RELATED SECURITY INTEREST OR THE PRIORITY OR PERFECTION OF ANY SUCH SECURITY INTEREST, THE INCOME OR EXPENSES FROM OR OF THE LOANS OR THE PROPERTY, OR THE COMPLIANCE OF THE LOANS OR PROPERTY WITH APPLICABLE BUILDING OR FIRE CODES, ZONING LAWS OR REGULATIONS, ENVIRONMENTAL LAWS OR REGULATIONS, LAWS OR REGULATIONS RELATED TO THE AMERICANS WITH DISABILITIES ACT OR OTHER LAWS OR REGULATIONS. PURCHASER AGREES THAT SELLER IS NOT LIABLE FOR OR BOUND BY ANY GUARANTEES, PROMISES, STATEMENTS, REPRESENTATIONS OR INFORMATION PERTAINING TO THE LOANS OR THE PROPERTY MADE OR FURNISHED BY ANY REAL ESTATE AGENT, BROKER, EMPLOYEE, SERVANT OR OTHER PERSON REPRESENTING OR PURPORTING TO REPRESENT SELLER, EXCEPT AS AND TO THE EXTENT EXPRESSLY SET FORTH HEREIN. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT THE COMPENSATION TO BE PAID TO SELLER FOR THE LOANS HAS BEEN DECREASED TO TAKE INTO ACCOUNT THAT THE LOANS ARE BEING SOLD SUBJECT TO THE FOREGOING DISCLAIMERS. IN ADDITION TO SECTIONS OF THIS CONTRACT CONTAINING OR RELATING TO OBLIGATIONS TO BE PERFORMED OR SATISFIED POST-CLOSING, PURCHASER AND SELLER AGREE THAT THE PROVISIONS OF THIS SECTION SHALL SURVIVE THE CLOSING OF THE TRANSACTION CONTEMPLATED BY THIS CONTRACT.

10. **Notices**

Any notice pursuant to this Contract shall be given in writing by (a) personal delivery, or (b) expedited delivery service with proof of delivery, or (c) United States Mail, postage prepaid, registered or certified mail, return receipt requested, or (d) prepaid telegram, telex or telecopy (provided that such telegram, telex or telecopy is confirmed by expedited delivery service or by mail in the manner previously described), sent to the intended addressee at the address set forth below, or to such other address or to the attention of such other person as the addressee shall have designated by written notice sent in accordance herewith, and shall be deemed to have been given either at the time of personal delivery, or, in the case of expedited delivery service or mail, as of the date of first attempted delivery at the address and in the manner provided herein, or, in the case of telegram, telex or telecopy upon receipt. Unless changed in accordance with the preceding sentence, the addresses for notices given pursuant to this Contract shall be as follows:

If to Seller:

David Davis, as Trustee
17080 Harbor Point Drive, Unit 1117
Fort Meyers, FL 33908

Henry R. Block, as Trustee

338 Minorca Avenue
Coral Gables, FL 33134

With a copy to:

 K. Lawrence Gragg, Esquire
135 San Lorenzo Avenue, Suite 750
Coral Gables, FL 33146

If to Purchaser:

BCB Tarpon, LLC
3696 Enterprise Avenue
Suite 100
Naples, FL   34104

With a copy to:

Edmond E. Koester
4001 Tamiami Trail North, Suite 300
Naples, FL  34103

## 11.  <u>Modifications</u>

This Contract cannot be changed orally, and no executory agreement shall be effective to waive, change, modify or discharge it in whole or in part unless such executory agreement is in writing and is signed by the parties against whom enforcement of any waiver, change, modification or discharge is sought.

## 12.  <u>Assigns</u>

This Contract shall inure to the benefit of and be binding on the parties and their respective legal representatives, successors, and assigns.  This Contract may not be assigned by either party without the other party's prior written consent, which consent may be granted or withheld by the other party, in the other party's sole and absolute discretion, and any assignment without the other party's prior written consent shall be deemed null and void and of no force and effect.

## 13.  <u>Time of the Essence</u>

Time is of the essence in the execution and performance of this Contract and of each of its provisions.

14. **Entire Agreement**

This Contract, including the Exhibits, if any, contain the entire agreement between the parties pertaining to the subject matter hereof and fully supersedes all prior agreements and understandings between the parties pertaining to such subject matter.

15. **Further Assurances**

Each party agrees that it will without further consideration execute and deliver such other documents, as may be reasonably requested by the other party to consummate more effectively the purposes or subject matter of this Contract. If Seller agrees to cooperate or provide assistance with respect to any litigation or other disputes subsequent to the Closing at Purchaser request, then Purchaser shall, upon demand, reimburse Seller for any reasonable costs, fees, expenses (including attorneys' fees and expenses) and other amounts that Seller incurs in connection with providing such cooperation and assistance. This Section shall expressly survive Closing.

16. **Counterparts**

This Contract may be executed in several counterparts, and all such executed counterparts shall constitute the same agreement. It shall be necessary to account for only one such counterpart in proving this Contract.

17. **Severability**

If any provision of this Contract is determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Contract shall nonetheless remain in full force and effect.

18. **Applicable Law / Venue**

THIS CONTRACT SHALL IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE SUBSTANTIVE FEDERAL LAWS OF THE UNITED STATES AND THE LAWS OF THE STATE OF FLORIDA. PURCHASER HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT SITTING IN LEE COUNTY, FLORIDA, IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS CONTRACT AND HEREBY IRREVOCABLY AGREES THAT ALL CLAIMS IN RESPECT OF SUCH ACTION OR PROCEEDING SHALL BE HEARD AND DETERMINED IN A STATE OR FEDERAL COURT SITTING IN LEE COUNTY, FLORIDA. NOTHING CONTAINED IN THIS SECTION SHALL AFFECT THE RIGHT OF SELLER TO BRING ANY ACTION OR PROCEEDING AGAINST PURCHASER OR ITS PROPERTY IN ANY OTHER COURT OF COMPETENT JURISDICTION. PURCHASER AND SELLER AGREE THAT THE PROVISIONS OF THIS SECTION SHALL SURVIVE THE CLOSING OF THE TRANSACTION CONTEMPLATED BY THIS CONTRACT. NOTHING CONTAINED IN THIS SECTION SHALL BE INTERPRETED TO PROVIDE ANY GREATER RIGHTS OR

ADDITIONAL CLAIMS TO PURCHASER THAN AS OTHERWISE PROVIDED IN THIS CONTRACT.

19. **Limited Liability of Seller**

If it is determined after Closing that Seller breached any warranty, representation or covenant contained in Sections 4, 8 and 15 of this Contract with respect to any particular Loan or interest transferred under this Contract that is materially and adversely affected by any such breach by Seller (each, a "***Defective Asset***"), and if Purchaser notifies Seller in writing of any such breach within the Survival Period, Purchaser's sole remedy shall be payment in Purchaser's monetary damages, provided however in no event shall such payment amount (i) include punitive or consequential damages or (ii) exceed $50,000; provided that the foregoing limitation in section (ii) shall not apply to the representations set forth in section 4(a).

20. **No Third Party Beneficiary**

The provisions of this Contract and of the documents to be executed and delivered at Closing are and will be for the benefit of Seller and Purchaser only and are not for the benefit of any third party, including, but not limited to any Broker executing this Contract pursuant to Section 11, and accordingly, no third party shall have the right to enforce the provisions of this Contract or of the documents to be executed and delivered at Closing.

21. **Exhibits and Schedules**

The following schedules or exhibits attached hereto shall be deemed to be an integral part of this Contract:

(a)      Exhibit A –    Form of Assignment of Mortgage

(b)      Schedule 1-    Principal Balance

22. **Captions**

The section headings appearing in this Contract are for convenience of reference only and are not intended, to any extent and for any purpose, to limit or define the text of any section or any subsection hereof.

23. **Construction**

The parties acknowledge that the parties and their counsel have reviewed and revised this Contract and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Contract or any exhibits or amendments hereto.

24. **Release**

EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS CONTRACT, AND EXCEPT FOR FRAUD, EFFECTIVE AS OF THE CLOSING, PURCHASER SHALL RELEASE SELLER, ANY TRUSTEE OF THE LOANS, EACH OF THEIR RESPECTIVE PREDECESSORS IN INTEREST AND SUCCESSORS AND ASSIGNS, TOGETHER WITH THE OFFICERS, DIRECTORS, PARTNERS, EMPLOYEES, INVESTORS, CERTIFICATE HOLDERS AND AGENTS OF EACH OF THE FOREGOING (THE "*LENDER PARTIES*") FROM ALL CLAIMS, ABSOLUTE OR CONTINGENT, KNOWN OR UNKNOWN, WHICH PURCHASER OR ANY AGENT, REPRESENTATIVE, AFFILIATE, EMPLOYEE, DIRECTOR, OFFICER, PARTNER, MEMBER, SERVANT, SHAREHOLDER, TRUSTEE OR OTHER PERSON OR ENTITY ACTING ON PURCHASER'S BEHALF OR OTHERWISE RELATED TO OR AFFILIATED WITH PURCHASER HAS OR MAY HAVE ARISING FROM OR RELATED TO ANY MATTER OR THING RELATED TO OR IN CONNECTION WITH THE LOANS, INCLUDING THE LOAN DOCUMENTS AND INFORMATION REFERRED TO HEREIN, AND ANY PHYSICAL OR ENVIRONMENTAL CONDITIONS, AND PURCHASER SHALL NOT LOOK TO THE LENDER PARTIES IN CONNECTION WITH THE FOREGOING FOR ANY REDRESS OR RELIEF. EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS CONTRACT, AND EXCEPT FOR FRAUD, EFFECTIVE AS OF THE CLOSING, SELLER SHALL RELEASE PURCHASER, ANY TRUSTEE OF THE LOANS, EACH OF THEIR RESPECTIVE PREDECESSORS IN INTEREST AND SUCCESSORS AND ASSIGNS, TOGETHER WITH THE OFFICERS, DIRECTORS, PARTNERS, EMPLOYEES, INVESTORS, CERTIFICATE HOLDERS AND AGENTS OF EACH OF THE FOREGOING (THE "*PURCHASER PARTIES*") FROM ALL CLAIMS, ABSOLUTE OR CONTINGENT, KNOWN OR UNKNOWN, WHICH SELLER OR ANY AGENT, REPRESENTATIVE, AFFILIATE, EMPLOYEE, DIRECTOR, OFFICER, PARTNER, MEMBER, SERVANT, SHAREHOLDER, TRUSTEE OR OTHER PERSON OR ENTITY ACTING ON SELLER'S BEHALF OR OTHERWISE RELATED TO OR AFFILIATED WITH SELLER HAS OR MAY HAVE ARISING FROM OR RELATED TO ANY MATTER OR THING RELATED TO OR IN CONNECTION WITH THE LOANS, INCLUDING THE LOAN DOCUMENTS AND INFORMATION REFERRED TO HEREIN, AND ANY PHYSICAL OR ENVIRONMENTAL CONDITIONS, AND SELLER SHALL NOT LOOK TO THE LENDER PARTIES IN CONNECTION WITH THE FOREGOING FOR ANY REDRESS OR RELIEF. THIS RELEASE SHALL BE GIVEN FULL FORCE AND EFFECT ACCORDING TO EACH OF ITS EXPRESSED TERMS AND PROVISIONS, INCLUDING THOSE RELATING TO UNKNOWN AND UNSUSPECTED CLAIMS, DAMAGES AND CAUSES OF ACTION.

25. **Indemnification**. Purchaser shall defend, indemnify and hold harmless Lender Parties from and against all losses, causes of action, liabilities, penalties, claims, demands, obligations, damages, costs and expenses, including without limitation attorneys' fees and costs, to which Lender Parties may become subject on account of (i) any breach by

Purchaser of its obligations, warranties, representations or covenants under this Contract, including, but not limited to, those made by Purchaser in Section 4 of this Contract (ii) actions by Purchaser or its agents to pursue any remedies against obligor, borrower or guarantor with respect to obligations related to any Loan or Property, that have been discharged in bankruptcy or as to which obligor, borrower or guarantor has been released from liability, (iii) actions by Purchaser or its agents to pursue remedies against collateral that does not secure the Loans, provided that such fact can reasonably be determined by information contained in the Loan Documents, or (iv) Seller's actions in cooperating with Purchaser pursuant to Section 15 of this Contract. Seller shall defend, indemnify and hold harmless Purchaser Parties from and against all losses, causes of action, liabilities, penalties, claims, demands, obligations, damages, costs and expenses, including without limitation attorneys' fees and costs, to which Purchaser Parties may become subject on account of (i) any breach by Seller of its obligations, warranties, representations or covenants under this Contract, including, but not limited to, those made by Purchaser in Section 5 of this Contract or (ii) actions by Seller or its agents to pursue any remedies against obligor, borrower or guarantor with respect to obligations related to any Loan or Property, that have been discharged in bankruptcy or as to which obligor, borrower or guarantor has been released from liability. The obligations in this Section 25 shall survive termination of the Contract.

26. **Waiver of Trial by Jury**. THE SELLER AND THE PURCHASER EACH KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES (TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW) ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATING TO THIS AGREEMENT.

**[Remainder of Page Intentionally Left Blank]**

IN WITNESS WHEREOF, this Contract is executed as of the Effective Date.


SELLER:                                              PURCHASER:

_____          BCB Tarpon, LLC, a Florida limited liability
HENRY R. BLOCK, as Trustee and not        company
individually



_____          By: _____
DAVID F. DAVIS, as Trustee and not        Name: _____
individually                                         Title: _____
                                                     Date: _____

Exibit "A"
to
Loan Purchase Contract

**ASSIGNMENT OF NOTE, MORTGAGE AND LOAN DOCUMENTS**


THIS ASSIGNMENT OF NOTE, MORTGAGE AND LOAN DOCUMENTS ("**Assignment**") is made as of the _____ day of _____, 20____, by David F. Davis, as Trustee and Henry R. Block, as Trustee ("the "**Assignor**") to _____, a _____(the "**Assignee**").

### BACKGROUND FACTS


A. Assignor is the legal and equitable owner and holder of that certain _____ Note executed by _____ ("**Borrower**"), in favor of _____ dated _____, in the original principal amount of $_____, (such promissory notes, as heretofore amended, modified, extended or renewed, are hereinafter collectively referred to as the "**Note**");

B. The Note is secured by that certain _____ (as amended, the "**Mortgage**");

C. Assignor is the legal and equitable owner and holder of the Note, Mortgage and the loan documents executed in connection therewith, including, without limitation, those described on Exhibit A hereto (collectively, the "Loan Documents");

D. Assignor has agreed to assign to Assignee all of its right, title and interest in, to and under the Note, Mortgage and Loan Documents.

NOW, THEREFORE, for and in consideration of the sum of one and no/100 ($1.00) dollar, and other good and valuable consideration paid by Assignee at the time of execution hereof, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Background Facts. The background facts as set forth above are agreed to be true and correct and incorporated herein by this reference.

2. Assignment. Assignor does hereby grant, bargain, sell, assign, transfer and set over unto Assignee, without recourse or warranty whatsoever, except as set forth in the Loan Purchase Contract between Assignor and Assignee dated May 2, 2016 (the "**Loan Purchase Contract**") all of Assignor's right, title, interest, claim and demand in and to the Note, Mortgage and Loan Documents, together with all moneys, principal and interest, due and to become due thereon, and all rights, remedies and incidents thereunto belonging. Concurrently herewith, Assignor has endorsed to Assignee, without recourse, the Note.

3.   AS IS Assignment; No Covenants and Warranties.  EXCEPT AS SET FORTH IN THE LOAN PURCHASE CONTRACT, NO WARRANTIES, COVENANTS OR REPRESENTATIONS, EXPRESS OR IMPLIED, ARE OR HAVE BEEN MADE BY ASSIGNOR, OR ANYONE ACTING ON ITS BEHALF.  WITHOUT IN ANY WAY LIMITING THE GENERALITY OF THE FOREGOING, NO WARRANTIES OR REPRESENTATIONS REGARDING (i) COLLECTABILITY OF THE NOTE, MORTGAGE OR ANY OTHER LOAN DOCUMENT; (ii) THE CREDITWORTHINESS OF ANY BORROWER OR OBLIGOR; OR (iii) THE VALUE OF ANY COLLATERAL OF ANY TYPE WHICH SECURES THE REPAYMENT OF ANY LOAN. BY ITS ACCEPTANCE OF THIS ASSIGNMENT, ASSIGNEE ACKNOWLEDGES AND AGREES THAT IT IS NOT RELYING PRESENTLY AND SHALL NOT BE ENTITLED TO RELY IN THE FUTURE ON ANY REPRESENTATIONS OR WARRANTIES BY ASSIGNOR EXCEPT AS SPECIFICALLY SET FORTH HEREIN AND IN THE LOAN PURCHASE CONTRACT, AND HEREBY IRREVOCABLY RELEASES AND WAIVES ANY AND ALL RIGHTS TO ANY CLAIMS, DAMAGES, OR CAUSES OF ACTION AGAINST ASSIGNOR.

4.   Successors and Assigns. This Assignment shall be binding upon and shall inure to the benefits of the parties hereto, their respective legal representatives, successors in title and assigns.

5.   Governing Law. This Assignment has been delivered in the State of Florida and the laws of the State of Florida shall govern the interpretation and validity and enforceability hereof without regard to concepts of conflicts of laws.

6.   Severability. In the event any provision of this Assignment is held to be invalid or unenforceable, such invalidity or unenforceability shall not affect the validity or enforceability of any other provision hereof.

Signed, sealed and delivered
in the presence of:

_____
HENRY R. BLOCK, as Trustee and not individually


_____
_____
[Print or type name]


_____
_____                Post office address of executing party:
[Print or type name]                            338 Minorca Avenue
                                                 Coral Gables, FL 33134


STATE OF FLORIDA
COUNTY OF MIAMI-DADE

The foregoing instrument was acknowledged before me this ____ day of May, 2016, by Henry R. Block. Such person did not take an oath and: *(notary must check applicable box)*

☐      is/are personally known to me.
☐      produced a current Florida driver's license as identification.
☐      produced _____ as identification.

{Notary Seal must be affixed}          _____
                                        Signature of Notary

                                        _____
                                        Name of Notary (Typed, Printed or Stamped)
                                        Commission Number (if not legible on seal): _____
                                        My Commission Expires (if not legible on seal): _____

Signed, sealed and delivered
in the presence of:

_____
DAVID F. DAVIS,, as Trustee and not individually


_____
_____
[Print or type name]


_____
_____                  Post office address of executing party:
[Print or type name]                                        17080 Harbor Point Drive
                                                                     Unit 1117
                                                                     Fort Myers, FL 33908



STATE OF FLORIDA
COUNTY OF LEE

The foregoing instrument was acknowledged before me this ____ day of May, 2016, by David F. Davis. Such person did not take an oath and: *(notary must check applicable box)*


☐         is/are personally known to me.
☐         produced a current Florida driver's license as identification.
☐         produced _____ as identification.

{Notary Seal must be affixed}          _____
                                                         Signature of Notary

                                                         _____
                                                         Name of Notary (Typed, Printed or Stamped)
                                                         Commission Number (if not legible on seal): _____
                                                         My Commission Expires (if not legible on seal): _____

Principal Balance/Escrow
As of _____

2014 LOAN

Principal Balance of the Note:                    $1, 400,000

2013 LOAN

Principal Balance of the Note:                    $350,000